ST. CLAIR COUNTY v. INTERSTATE SAND AND CAR TRANSFER COMPANY.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF ILLINOIS.

No. 17.    Argued March 19, 1903.—Decided February 23, 1904.

Conceding, arguendo, that the police power of a State extends to the establishment, regulation or licensing of ferries on navigable streams which are boundaries between it and another State, there are no decisions of this court importing power in a State to directly control interstate commerce or any transportation by water across such a river which does not constitute a ferry in the strict technical sense of that term.

There is an essential distinction between a ferry in the restricted and legal signification of the term and the transportation of railroad cars across a boundary river between two States constituting interstate commerce, and such transportation cannot be subjected to conditions imposed by a State which are direct burdens upon interstate commerce.

THE facts in this case, which involved the right of the county to recover statutory penalties for carrying on, without a ferry license, the transportation of cars across the Mississippi River between points in Illinois and Missouri, are stated in the opinion.

Mr. Charles W. Thomas for plaintiff in error submitted:

The authority to establish and regulate ferries between States

is not included in the power of the Federal government to ":regulate commerce with foreign nations and among the several States and with Indian tribes." That authority was reserved to the States respectively and never delegated to the United States. *Conway et al.* v. *Taylor's Exrs.*, 1 Black, 603; *Wiggins Ferry Co.* v. *East St. Louis*, 107 U. S. 365; *Tugwell* v. *Eagle Pass Ferry Co.*, 74 Texas, 480; *Carroll* v. *Campbell*, 108 Missouri, 550; *S. C.*, 110 Missouri, 557; *Marshall* v. *Grimes*, 41 Mississippi, 27; *People* v. *Babcock*, 11 Wend. 586; *Fanning* v. *Gregoire*, 16 How. 524. See also *Mills* v. *St. Clair County*, 3 Gil. (Ill.) 197; aff'd 8 How. 569; *Columbia & Bridge Co.* v. *Geisee*, 38 N. J. Law, 39; *Memphis* v. *Overton*, 3 Yerger, 390; *Chilvers* v. *People*, 11 Michigan, 43; *Bowman* v. *Walthen*, 2 McLean, 377. A ferry is in respect of the landing place and not of the water. The water may be to one and the ferry to another. 13 Viner's Ab. 208 A, cited in *Conway* v. *Taylor's Ex.*, 1 Black, 629.

*Mr. John F. Lee*, with whom *Mr. George R. Lockwood* was on the brief, for defendant in error:

The ferry business carried on by defendant is interstate commerce conducted on the Mississippi River, a navigable water of the United States; and the State of Illinois cannot require defendant to obtain a license from the Board of Commissioners of St. Clair County to conduct such commerce. *Gibbons* v. *Ogden*, 9 Wheat. 1; *Gloucester Ferry Co.* v. *Pennsylvania*, 114 U. S. 196; *Covington Bridge Co.* v. *Kentucky*, 154 U. S. 204, 217; *Harman* v. *Chicago*, 147 U. S. 396; *Brown* v. *Houston*, 114 U. S. 622; *Moran* v. *New Orleans*, 112 U. S. 69; *Mobile* v. *Kimball*, 102 U. S. 691; *Hall* v. *DeCuir*, 95 U. S. 485; *Rhodes* v. *Iowa*, 170 U. S. 412; *Wabash Railway Co.* v. *Illinois*, 118 U. S. 557, 564; *Pickard* v. *Pullman Co.*, 117 U. S. 34; *Hays* v. *Pacific Mail S. S. Co.*, 17 How. 596; *Welton* v. *Missouri*, 91 U. S. 282; *In re Debs*, 158 U. S. 564; *Addyston Pipe & Steel Co.* v. *United States*, 175 U. S. 211; *Adams Express Co.* v. *Ohio*, 166 U. S. 185; *Philadelphia, etc.*, v. *Pennsylvania*, 122 U. S. 326; *Bowman* v. *C. & N. W. Ry. Co.*, 125 U. S. 465, 508; *Leloup* v. *Mobile*, 127 U. S. 640; *St.*

*Louis* v. *W. U. Tel. Co.*, 148 U. S. 92; *California* v. *Pacific R. R. Co.*, 127 U. S. 1; *Crutcher* v. *Kentucky*, 141 U. S. 47; *Brennan* v. *Titusville*, 153 U. S. 289, 302; *Fargo* v. *Michigan*, 121 U. S. 230, 245; *Hooper* v. *California*, 155 U. S. 648, 653; *Pickard* v. *Pullman Co.*, 117 U. S. 34; *Norfolk Ry. Co.* v. *Pennsylvania*, 136 U. S. 114; *Illinois Central R. R. Co.* v. *Illinois*, 163 U. S. 142; *Robbins* v. *Shelby Co.*, 120 U. S. 489; *St. Louis* v. *Consolidated Coal Co.*, 158 Missouri, 342. .

· Even if the State of Illinois had power to exact a license fee from all persons engaged in carrying on interstate commerce by means of ferries, the discriminations of the act in question in favor of existing ferries and landowners, and the authority given the Boards of County Commissioners to discriminate between applicants for a license, makes the act void so far as it relates to interstate commerce. *Guy* v. *Baltimore*, 100 U. S. 434.

Mr. Justice White delivered the opinion of the court.

This suit was commenced in a court of the State of Illinois by the county of St. Clair, a municipal corporation of the State of Illinois, against the Interstate Sand and Car Transfer Company, a Missouri corporation, to recover statutory penalties. We shall hereafter refer to the one party as the county and to the other as the company. The right of the county to recover was based upon the charge that the company had, during certain years which were stated, incurred penalties to the amount sued for, because it had carried on a ferry for transporting railroad cars, loaded or unloaded, from the county of St. Clair in Illinois to the Missouri shore and from the Missouri shore to the county of St. Clair, without obtaining a license from the county, as was required by the law of Illinois. The cause of action was thus stated in the complaint.

"And plaintiff avers that the said defendant, in order to keep and use its said ferry at the time of its establishment as aforesaid, constructed and caused to be built a permanent landing

place with certain cradles and roadways thereto, within the limits of said county, and has from thence hitherto maintained the same, by means whereof as well as by means of certain steamboats and barges, then and from thence hitherto used for that purpose by the defendant, it, the said defendant, was enabled to and did, at various times and continuously since the day last aforesaid, ferry for profit and hire, property, to wit, certain railroad cars from said county across the Mississippi River aforesaid, and from the west bank of said river to the said county, and has so ferried said cars within the time aforesaid to the number of, to wit, eighty thousand railroad cars across said river, without any license from the county board of the plaintiff so to do, whereby and by virtue of the statute in such case made and provided penalties have accrued to the plaintiff in the sum of $3 for each one of said cars so ferried, to wit, the sum of two hundred and forty thousand dollars."

The case was removed by the company on diversity of citizenship to the Circuit Court of the United States for the Southern District of Illinois. In that court the company filed a general demurrer, which was sustained. From the final judgment dismissing the complaint the case was brought directly to this court because solely involving the construction or application of the Constitution of the United States.

The court below decided that the company was not liable for the penalties, because the law of Illinois purporting to impose upon the company the obligation of taking out a license was not binding, as it was repugnant to the commerce clause of the Constitution of the United States. The conclusions of the court upon this subject were in substance based on what was deemed to be the result of the rulings in *Gloucester Ferry Company* v. *Pennsylvania*, 114 U. S. 196, and *Covington & Cincinnati Bridge Company* v. *Kentucky*, 154 U. S. 204.

In the argument at bar the county insists that the lower court erred in applying the cases mentioned, because those cases did not question the power of the several States to license and regulate ferries, but prevailed upon other considerations, and

hence were inapposite. It is insisted that a consistent line of other cases decided by this court, commencing at an early day, determined that the right to establish, regulate and license ferries, even though they be across a navigable river constituting a boundary between two States, rests exclusively within the several States, as embraced within police powers reserved to the several States, and not delegated to the national government. On the other hand, the company insists that, whilst undoubtedly there are decisions of this court apparently sustaining the contention of the other side, when properly considered the cases referred to must be limited to ferries over streams wholly within a State, and to the extent that certain of the cases cannot be so limited, they have been in effect overruled. As, then, both sides confidently rely upon prior adjudications of this court, and both in effect argue that the cases which are asserted to sustain the view urged by the other side are in irreconcilable conflict with other cases, it becomes necessary to briefly advert to the cases relied upon by both parties in order to ascertain whether the asserted antagonism between the decided cases really obtains so far as it may be necessary for the decision of the question arising on this record, and if not, to apply the rule settled by the previous cases, and, if the conflict does exist between the adjudications, to determine which of the prior decisions announce the correct rule and to follow it.

In *Gibbons* v. *Ogden*, (1824) 9 Wheat. 1, wherein it was held that the acts of the legislature of New York, granting to Livingston and Fulton exclusive rights to navigation, by steamboats, in the navigable waters within the jurisdiction of the State of New York, was repugnant to the commerce clause of the Constitution, in the course of the opinion Mr. Chief Justice Marshall said (p. 65):

"Internal commerce must be that which is wholly carried on within the limits of a State; as, where the commencement, progress and termination of the voyage are wholly confined to the territory of the State. This branch of power includes

a vast range of state legislation, such as turnpike-roads, toll-bridges, exclusive rights to run stage-wagons, auction licenses, licenses to retailers and to hawkers and pedlers, ferries over navigable rivers and lakes, and all exclusive rights to carry goods and passengers, by land or water. All such laws must necessarily affect, to a great extent, the foreign trade, and that between the States, as well as the trade among the citizens of the same State. But, although these laws do thus affect trade and commerce with other States, Congress cannot interfere, as its power does not reach the regulation of internal trade, which resides exclusively in the States."

In *Fanning* v. *Gregoire*, (1853) 16 How. 524, the question for decision was whether a subsequent grant of a license for a ferry across the Mississippi River interfered with and violated the rights of a prior license to a ferry of like character. In other words, the question was whether the grant of the first license was exclusive and prevented the grant of a second license. The court decided that the first grant was not exclusive; and in concluding the opinion—speaking through Mr. Justice McLean, and noticing the argument that the guaranty contained in the ordinance of 1787, in respect to the free navigation of the Mississippi River and the power delegated to Congress to regulate commerce between the States were in conflict with the asserted power of the State to grant the second ferry license in question—said (p. 534):

"Neither of these interfere with the police power of the States, in granting ferry licenses. When navigable rivers, within the commercial power of the Union, may be obstructed, one or both of these powers may be invoked."

In *Conway* v. *Taylor*, (1861) 1 Black, 603, the case was substantially this: An exclusive franchise had been granted by the laws of Kentucky to operate a ferry from the Kentucky shore across the Ohio River. A person having commenced to operate a ferry from the Ohio shore to the Kentucky side, in conflict with the exclusive right, his power to do so was resisted in the Kentucky courts on the ground that it was

violative of the Kentucky ferry franchise. The courts of Kentucky held that it was in conflict with the Kentucky franchise for the person operating the ferry from the Ohio shore to conduct a ferry from the Kentucky side back to Ohio, and therefore restrained the ferry to that extent. The Kentucky court in effect enforced the exclusive right of the one owning the Kentucky ferry to ferry from Kentucky across to Ohio, but declined to restrain the right of the Ohio ferryowner to ferry from Ohio to Kentucky. The judgment of the Kentucky court came to this court for review and it was affirmed. In the course of the opinion, announced by Mr. Justice Swayne, it was expressly stated that the right existed in the several States bordering on navigable rivers which were a boundary between two States to grant a ferry privilege from their own borders to cross the river. The court said (p. 629):

"The concurrent action of the two States was not necessary. 'A ferry is in respect the landing place, and not of the water. The water may be to one and the ferry to another.' 13 Viner's Ab. 208A."

*    *    *    *    *    *    *    *

"The franchise is confined to the transit from the shore of the State. The same rights which she claims for herself she concedes to others."

Further along in the opinion (p. 633) the language which we have previously cited from the opinion of Mr. Chief Justice Marshall in *Gibbons* v. *Ogden* was quoted in part, as follows (italicized as in the reports):

"The court said: 'They [State inspection laws] form a portion of the immense mass of legislation which embraces everything within the territory of a State *not surrendered to the General Government;* all which can be most advantageously exercised by the States themselves. Inspection laws, quarantine laws, health laws of every description, as well as laws for regulating the internal commerce of a State, and those which respect turnpike roads, *ferries, &c.,* are parts of this mass.' "

After referring to *Fanning* v. *Gregoire,* and citing the passage

which we have previously quoted as affirming the doctrine that
a State had a right to grant a ferry license across a navigable
river, being the boundary between the granting and another
State, the question of the operation of the commerce clause
of the Constitution of the United States was passed on. The
court declared (p. 633) that there was no repugnancy to the
commerce clause of the Constitution in the mere licensing by
a State of a ferry; that the regularity and nature of the business
of ferrying was such that the granting of a privilege on the
subject did not regulate interstate commerce, and therefore,
despite an exclusive ferry privilege, interstate commerce was
free from restraint by the State. In conclusion, however, the
court pointed out (p. 634) that undoubtedly if in the grant of
a ferry privilege there were contained provisions repugnant
to the commerce clause, it would be the duty of the court to
prevent their enforcement.

In *Wiggins Ferry Company* v. *East St. Louis*, (1882) 107 U. S.
365, the case was this: The ferry company was in the enjoy-
ment of a ferry franchise to operate across the Mississippi
River between Illinois and Missouri. It was domiciled in
Illinois, that State being the *situs* of its boats and other prop-
erty. This property was taxed in Illinois as other property,
and there was also levied upon the company a license tax for
the privilege of carrying on the ferry, the validity of which
last exaction was the question which the case presented. The
collection of the license charge was resisted on the ground that
the corporation was exempt by the contract arising from the
grant of its franchise from the payment of a license charge,
and that if not, the exaction of the license tax for the privilege
of ferrying across a navigable river lying between two States
was repugnant to the commerce and other clauses of the Con-
stitution of the United States not necessary to be specially
referred to.

After disposing adversely to the corporation of the conten-
tion concerning the alleged exemption, the court considered
the application of the commerce clause of the Constitution,

and decided that proposition against the corporation. In doing so the court referred to the passage in the opinion of Chief Justice Marshall in *Gibbons* v. *Ogden,* which we have already quoted, and also referred approvingly to the opinions in *Conway* v. *Taylor* and *Fanning* v. *Gregoire, supra.*

In *Gloucester Ferry Company* v. *Pennsylvania,* (1885) 114 U. S. 196, the facts were these: The ferry company was incorporated and domiciled in New Jersey, carried on a ferry business over the Delaware River between Camden, New Jersey, and Philadelphia. The *situs* of its boats and property were in New Jersey; but the company owned in Philadelphia a wharf or slip at which its boats landed. The taxing officers of the State of Pennsylvania assessed against the corporation, on the ground that it was doing business within the State, a tax upon the estimated value of its capital stock, and the validity of this tax was the question decided. After referring to the reasoning of the Supreme Court of Pennsylvania affirming the validity of the tax, in which it was pointed out that the company did business in the State because it landed in the State of Pennsylvania, and there in part carried on its ferry business, the court said (p. 203):

"As to the first reason thus expressed, it may be answered that the business of landing and receiving passengers and freight at the wharf in Philadelphia is a necessary incident to, indeed a part of, their transportation across the Delaware River from New Jersey. Without it that transportation would be impossible. Transportation implies the taking up of persons or property at some point and putting them down at another. A tax, therefore, upon such receiving and landing of passengers and freight is a tax upon their transportation; that is, upon the commerce between the two States involved in such transportation.

"It matters not that the transportation is made in ferryboats, which pass between the States every hour of the day. The means of transportation of persons and freight between the States does not change the character of the business as one

of commerce, nor does the time within which the distance between the States may be traversed. Commerce among the States consists of intercourse and traffic between their citizens, and includes the transportation of persons and property, and the navigation of public waters for that purpose, as well as the purchase, sale and exchange of commodities. The power to regulate that commerce, as well as commerce with foreign nations, vested in Congress, is the power to prescribe the rules by which it shall be governed, that is, the conditions upon which it shall be conducted; to determine when it shall be free and when subject to duties or other exactions. The power also embraces within its control all the instrumentalities by which that commerce may be carried on, and the means by which it may be aided and encouraged."

After reviewing and applying many prior adjudications of this court, in which the want of power of the several States to burthen interstate commerce had been pointed out, in its various aspects, the court considered the statement of Mr. Chief Justice Marshall in *Gibbons* v. *Ogden*, which we have previously quoted, and observed (p. 215):

"The power of the States to regulate matters of internal police includes the establishment of ferries as well as the construction of roads and bridges. In *Gibbons* v. *Ogden*, Chief Justice Marshall said that laws respecting ferries, as well as inspection laws, quarantine laws, health laws, and laws regulating the internal commerce of the States, are component parts of an immense mass of legislation, embracing everything within the limits of a State not surrendered to the general government; but in this language he plainly refers to ferries entirely within the State, and not to ferries transporting passengers and freight between the States and a foreign country."

Although no reference was made in the opinion to *Fanning* v. *Gregoire, Conway* v. *Taylor* and *Wiggins Ferry* v. *East St. Louis*, in concluding the opinion it was said (p. 217):

"It is true that, from the earliest period in the history of the

government, the States have authorized and regulated ferries, not only over waters entirely within their limits, but over waters separating them; and it may be conceded that in many respects the States can more advantageously manage such interstate ferries than the general government; and that the privilege of keeping a ferry, with a right to take toll for passengers and freight, is a franchise grantable by the State, to be exercised within such limits and under such regulations as may be required for the safety, comfort and convenience of the public. Still the fact remains that such a ferry is a means, and a necessary means, of commercial intercourse between the States bordering on their dividing waters, and it must, therefore, be conducted without the imposition by the States of taxes or other burdens upon the commerce between them. Freedom from such impositions does not, of course, imply exemption from reasonable charges, as compensation for the carriage of persons, in the way of tolls or fares, or from the ordinary taxation to which other property is subjected, any more than like freedom of transportation on land implies such exemption. . . . How conflicting legislation of the two States on the subject of ferries on waters dividing them is to be met and treated is not a question before us for consideration. Pennsylvania has never attempted to exercise its power of establishing and regulating ferries across the Delaware River. Any one, so far as her laws are concerned, is free, as we are informed, to establish such ferries as he may choose. No license fee is exacted from ferry-keepers. She merely exercises the right to designate the places of landing, as she does the places of landing for all vessels engaged in commerce. The question, therefore, respecting the tax in the present case is not complicated by any action of that State concerning ferries. However great her power, no legislation on her part can impose a tax on that portion of interstate commerce which is involved in the transportation of persons and freight, whatever be the instrumentality by which it is carried on."

The tax imposed by the State of Pennsylvania was decided

to be void, as being repugnant to the commerce clause of the Constitution.

In *Covington &c. Bridge Co.* v. *Kentucky*, 154 U. S. 204, a law of the State of Kentucky regulating the tolls to be charged by a bridge company operating a bridge across the Ohio River between Kentucky and Ohio came under review. After an extended consideration of the previous cases, with one exception, including the cases to which we have previously referred, it was decided that as the bridge was over a navigable stream between two States, the power to regulate the tolls thereon was in Congress, and therefore the State regulation was void.

The position of the parties as to the cases which we have reviewed is this: The county insists that the statement in *Gibbons* v. *Ogden*, that the establishment of ferries was within the reserved powers of the States, and the rulings in *Fanning* v. *Gregoire, Conway* v. *Taylor* and *Wiggins Ferry* v. *East St. Louis*, affirmatively settle that a State may establish ferries over a navigable river, the boundary between two States, and license the same, and that doing so is not only not repugnant to the commerce clause of the Constitution of the United States, but is in consonance therewith, since the power as to ferries was reserved to the States and not delegated to the national government. The *Gloucester Ferry* case, it is said, rested upon the nature of the particular tax imposed by the State of Pennsylvania, and that the case may hence not be considered as overruling the previous cases, not only because it did not expressly refer to them, but also because come expressions found in the opinion which we have cited are construed as substantially affirming the right of the State to regulate and license a ferry like the one here in question. On the other hand, the corporation urges that the rulings in *Fanning* v. *Gregoire* and *Conway* v. *Taylor* proceeded upon a misconception and partial view of the language of Chief Justice Marshall in *Gibbons* v. *Ogden*. That language, it is insisted, when the sentences are considered which immediately precede the pas-

sage quoted in *Fanning* v. *Gregoire* and *Conway* v. *Taylor,* clearly demonstrates that the Chief Justice was referring to the power of the States to license and control ferries on streams of a local character, and this, it is said, is demonstrated by the statement on the subject in the *Gloucester Ferry* case. The case of *Wiggins Ferry* v. *East St. Louis,* it is argued, proceeded, not upon the right of the State over the ferry, but upon its power to tax property whose *situs* was within its jurisdiction, and this was the view adopted by the court below. The *Gloucester Ferry* case, it is urged, did not proceed upon the nature of the tax, but upon the want of power in the State of Pennsylvania to exert its control over a ferry crossing a river which was a boundary between two States, so as in effect to burthen the carrying on of interstate commerce. And that case, it is further insisted, therefore qualifies, if it does not specifically overrule, the earlier cases.

We do not think, however, that for the purposes of this case we need enter into these contentions, because we consider that in any view which may be taken of the previous cases, each and all of them are conclusive of this case without reference to any real or supposed conflict between them.

First. None of the cases, whatever view may be taken of them, imports power in a State to directly control interstate commerce. Conceding, *arguendo,* that the police power of a State extends to the establishment, regulation and licensing of ferries on a navigable stream, being the boundary between two States, none of the cases justifies the proposition that such power embraces transportation by water across such a river which does not constitute a ferry in a strict technical sense. In that sense "a ferry is a continuation of the highway from one side of the water over which it passes to the other, and is for transportation of passengers or of travellers with their teams and vehicles and such other property as they may carry or have with them." *Mayor &c. of New York* v. *Starin,* 106 N. Y. 1, 11; *Broadnax* v. *Baker,* 94 N. Car. 675. It proceeds

at regular intervals, and, growing out of the local necessities and the public interest in its operation, is subject to local control, and at common law, the exclusive franchise to operate a ferry within designated limits might be conferred upon a particular person or persons. In a strict sense the ferry business is confined to the transportation of persons with or without their property, and a ferryman carrying on only a ferry business is bound to transport in no other way. *Mayor &c. of New York* v. *Starin, supra; Wyckoff* v. *Queens County Ferry Company,* 52 N. Y. 32.

Indeed, the essential distinction between a ferry in the restricted and legal signification of that term and transportation as such constituting interstate commerce was pointedly emphasized in a passage from the opinion in *Conway* v. *Taylor, supra,* which we have previously quoted, and the distinction between the two was necessarily involved, if it may not be said to have been controlling, in the decision of that case.

The difference between a ferry in its true sense and transportation of the character of that now under review is shown in the case of *Mayor of New York* v. *New England Transfer Company,* 14 Blatch. 159. In that case a boat was operated from Jersey City in New Jersey to Mott Haven in New York, and from Mott Haven to Jersey City. In this boat, by means of tracks, railroad cars, both passenger and freight, were run and carried under contract with the railroad company for the purpose of further transportation. The contention was that the operation of this boat constituted the running of a ferry, and therefore to so operate it required a ferry license from the proper authority of the city of New York. The court (Shipman, J.), whilst not denying the power of the city of New York to require a license for a ferry operating over the route in question, held that the use of the boat in the manner specified was not the operation of a ferry. After pointing out the similarity between bridges and ferries and directing attention to *Bridge Proprietors* v. *Hoboken Company,* 1 Wall. 116, in which it was

held that a mere railroad bridge, utilized for the purpose of transporting cars across a navigable river, did not infringe an exclusive right to maintain a bridge for general purposes theretofore granted by state authority, and demonstrating the identity in principle between the case before it and that case, said (p. 167): ·

"The reasoning which denies that a railroad bridge is an interference with an exclusive right theretofore granted to build an ordinary bridge, applies with almost equal force to the question, whether a ferry franchise is interfered with by a ferry which is designed for the transportation of railroad cars only. The boat of the defendants is provided with two railroad tracks, which prevent the entrance or egress of ordinary vehicles, and also of foot passengers, except as they are transported in cars which run upon the railroad tracks. The boat is exclusively used for the transportation of railroad cars, in connection only with the arrival of trains. It is impossible to transport ordinary vehicles upon the boat, it is impracticable to transport foot passengers, except as they are conveyed to the boat in cars. The whole arrangement of boat and docks is for the ingress and egress of railroad cars, and not for the accommodation of anything else. The ferry is a part of a continuous through railroad line from places north and east of the city of New York, to places south and southwest of that city, and the trips of the boat are dependent upon the arrival of through railroad trains.

"Such a ferry is unlike an ordinary ferry for the transportation across a river of persons, animals and freight, at intervals more or less regular, for fare or toll."

Second. As we conclude from the considerations previously expressed that the transportation of railroad cars—whether loaded or unloaded—across the Mississippi River at the point in question was not the maintenance of a ferry in the proper sense of that term, and that such business was essentially interstate commerce, the only question remaining for decision

is, did the county have the power to require the obtaining of a license by the company as a prerequisite to the carrying on of such interstate commerce and to impose the penalties sued for, because a license had not been obtained? In examining this question we need not stop to determine how far, if at all, a State may, under its general police power, require the taking out of a license for the carrying on of the business of interstate commerce to the extent necessary to enable the State or its subdivisions to exercise such supervision as may be required for the safety of life and property. This results, because even conceding, *arguendo*, such power, we think it clear that such conditions were attached to the obtaining of a license in this case as relieved the company from the duty of complying with the requirements of the law under which liability is here asserted. That liability is contained in chapter 55 of the Revised Laws of Illinois, in force in 1874. By this law authority was conferred upon the county to grant a ferry license; and it was made the duty of a person or corporation desiring to carry on a ferry to make application for such license. But power was conferred upon the county to withhold the grant of a license in a particular case if deemed best, and to grant it, preferably, to a citizen of the State of Illinois; and the acceptance of the license imposed the absolute obligation upon the applicant to carry on a technical ferry business, to operate at designated hours during the day and during the entire night. In other words, the law under which license was required not only subjected the applicant for the license to discriminatory provisions, but in addition compelled the licensee, if he desired to carry on a purely interstate commerce business, to conduct a general ferry business. However valid these conditions may be when applied to a ferry business in the restricted sense, under the assumption which we have indulged in, *arguendo*, that the State had the power to regulate a ferry upon a navigable stream forming the boundary between two States, it is obvious that the conditions to which we have alluded were

illegal because a direct burden upon interstate commerce, was made a condition precedent to the doing of business of that character.

· Because we have, *arguendo*, rested our conclusion in this case upon the assumption that the respective States have the power to regulate ferries over navigable rivers constituting boundaries between States, we must not be understood as deciding that that doctrine, which undoubtedly finds support in the opinions announced in *Fanning* v. *Gregoire* and *Conway* v. *Taylor*, has not been modified by the rule subsequently laid down in the *Gloucester Ferry* case and the *Covington Bridge* case. As this case has not required us to enter into those considerations we have not done so.

*Affirmed.*