UNITED STATES v. CANADIAN PAC. RY. CO.

No. 20730.

District Court, W. D. Washington, N. D.
Oct. 19, 1933.

852

The plaintiff has brought this action to recover compensation for overtime service performed by employees of the immigration service, as provided by Act approved March 2, 1931 (8 USCA §§ 109a, 109b), and Department of Labor General Order 175, issued April 27, 1931.

The court finds the following facts:

The defendant is a foreign corporation operating a line of steamships on the waters of Puget Sound, the Gulf of Georgia, Straits of De Fuca, and the Pacific Ocean, and operates a triangular service between Seattle, Victoria, and Vancouver, B. C., over waters classified by the United States Department of Commerce by the Pilot Rules for Inland Waters as a portion of the high seas (page 14), two steamers going in opposite directions, Victoria, Seattle, and Vancouver; and Seattle, Vancouver, and Victoria, on regular daily schedule. Day service: Leave Vancouver 10:30 a. m., arrive Victoria 3 p. m.; leave Victoria 3:45 p. m., arrive Seattle 8:30 p. m.; leave Seattle 9 a. m., arrive Victoria 2 p. m., arrive Vancouver 6:30 p. m. Night service: Leave Seattle 11:30 p. m., arrive Vancouver 8 a. m.; leave Vancouver 1 p. m., arrive Seattle 7:30 a. m. The service between Victoria and Seattle was inaugurated in 1903, and the triangular service in 1908.

It is testified that the vessels used were designed and constructed for this particular service to "carry a large number of passengers and accommodate the automobiles and passengers that traveled with them, and some mail and minor shipments of cargo in the way of small shipments of perishables; but, in the main, they are passenger steamers and carry a large number of passengers, and of recent years the growth of automobile traffic necessitated further development of that type, and the Princess Marguerite and the Princess Kathleen are the outgrowth of this development."

Defendant has no license or franchise to operate a ferry line with these vessels. The defendant is operating regular ferry lines between Nanaimo and Vancouver, Sidney and Anacortes, Victoria and Port Angeles, but on these ferry routes the conventional open-end type of ferryboats are used.

The vessels, for the examination of the passengers and crews of which overtime pay is sought are: Princess Kathleen, tonnage 2,875.12, passengers 1,280, berths 290; Princess Charlotte, tonnage 3,924.74, passengers 600, berths 230; Princess Louise, tonnage 4,031.92, passengers 400, berths 262; Princess Adelaide, tonnage 3,061, passengers 400, berths 206; Princess Marguerite, tonnage, passengers, and berths not given. Each vessel also has a spacious dining room. In the advertising matter of the defendant, these vessels are referred to as "Princess Liners," and are classified by the United States Steamboat Inspection Service as foreign passenger steamers. The distance from Victoria to Vancouver is approximately 85 miles; from Victoria to Seattle, 81 miles; from Vancouver to Seattle, 145 miles. Vancouver is approximately 25 miles north of the international boundary, and Seattle is approximately 120 miles south of it. The route from Seattle to Vancouver crosses the waters of Puget Sound, Straits of Georgia, and a part of the high sea, and is in a general parallel course to the coast line and shore line of the Great Northern Railway running from Seattle to Vancouver. The Puget Sound Navigation Company operates an international passenger, etc., ferry service, but its vessels are all built upon the conventional ferryboat lines, with open end for embarking and debarking automobiles and passengers.

During the period from March 1, 1932, to February 28, 1933, the defendant carried from Vancouver and Victoria to Seattle 45,387 passengers; from Seattle to Vancouver and Victoria, 48,116; 1,498 automobiles from Vancouver and Victoria to Seattle, and 1,133 automobiles from Seattle to Vancouver and Victoria. Automobiles are embarked and debarked from the defendant's vessels at side port or gangway. Some of the older vessels had to have the gangway opened wider to accommodate the automobiles.

Overtime charges amount to $4,248.80.

From the foregoing facts the conclusion must follow: That the defendant's boats in issue are not international ferries within the exception of section 109b, title 8, USCA: "Provided, That this section shall not apply

to the inspection at designated ports of entry of passengers arriving by international ferries, bridges, or tunnels, or by aircraft, railroad trains, or vessels on the Great Lakes and connecting waterways, when operating on regular schedules. (Mar. 2, 1931, c. 368, § 2, 46 Stat. 1467.)"

Anthony Savage, U. S. Atty., and Hamlet P. Dodd, Asst. U. S. Atty., both of Seattle, Wash., for plaintiff.

Bogle, Bogle & Gates, of Seattle, Wash., for defendant.

NETERER, District Judge (after stating the facts as above).

■ A ferry line is a creation of local franchise after finding of necessity, after notice and formal hearing by local authority, and may be intrastate, interstate, and, by the same token, international. Volume 6, title 32, §§ 5462–5483, Rem. Rev. Stat. .of Washington. The type of the vessels and the service rendered, aside from the local license or franchise, obviously determine the character of the service. The vessels are of the ocean liner type, with a deck arrangement for automobiles with other cargo, all embarking and debarking at the side port or gangway. The spacious dining room service and berths and sleeping apartments indicate comfort and service, other than ferry service. A ferry is a service of necessity, for the common good, to reach a point across a stream, lagoon, or lake, or bay. The service of the vessels in issue predominates in no such service, but rather offers a privilege to view the scenic beauties afforded by the many islands of the San Juan Archipelago of Puget Sound, pronounced by tourists to equal the beauties of the Thousand Islands of the Gulf of St. Lawrence, and is said the picturesque sunset is not surpassed by the sunset of the Bay of Naples, and give, instead of a ferry service, a delightful scenic service and service competitive—not necessary—with the almost parallel line of the railway and the Pacific Highway, a public thoroughfare between Seattle and Vancouver, B. C., for a distance of approximately 145 miles. Nor does the service furnish a connecting link for highway traffic. Of course, highways emanate from each city terminus of the steamship line where the ships berth at the ocean docks. A ferry may be said to be a necessary service by specially constructed boat to carry passengers and property across rivers or bodies of water from a place on one shore to a point conveniently opposite on the other shore and in continuation of a highway making connections with a thoroughfare at each terminus. Anciently, a ferry performed the same service of carrying people and cargo across a river, small lagoon, or narrow lake on the water craft as was later, and is, carried by a bridge structure above the water. This service was extended to larger lakes and other larger bodies of water in extension of, or forming a connecting link to, highways.

■ The distance from Seattle to Vancouver over the defendant's route and the distance between the same points over the line of railway and public highway are approximately the same. The court judicially knows that the Pacific Highway is a construction according to the modern scientific conception of hard-surface highway, with the distance approximately the same as the railway or the steamboat route.

■ Defendant has no license or franchise to operate a ferry within the boundaries of the state of Washington. The police power of the state, no doubt, extends to regulation of a ferry operating in and into the state, if interstate or foreign commerce is not directly burdened. St. Clair County v. Interstate Sand & Car Transfer Co., 192 U. S. 454, 24 S. Ct. 300, 48 L. Ed. 518. Nor has the Congress the power to interfere with police regulation relating exclusively to internal affairs. Regulation of operation of international ferries within the state is feasible without violation of international custom or law. United States v. De Witt, 9 Wall. (76 U. S.) 41, 19 L. Ed. 593. Nor is the United States concerned with conditions in which internal trade may be carried on, The Trade-Mark Cases, 100 U. S. 82, 25 L. Ed. 550; nor to the reasonable regulation of wharves, piers, docks, boat landings, etc., Cannon v. New Orleans, 20 Wall. (87 U. S.) 577, 22 L. Ed. 417; nor establishment of ferries, Conway v. Taylor's Executors, 1 Black (66 U. S.) 603, 17 L. Ed. 191.

■ It is obvious from the conventional seagoing construction of the vessels, the character of the service rendered, and absence of compliance or attempt to comply with local ferry laws, the defendant was not and is not operating the vessels in issue as an international ferry, and therefore within the exception, section 109b, title 8, USCA; and judgment must follow for the plaintiff.