OPINION OF THE COURT
Harry E. Seidell, J.
On December 30, 1977 a petition for an order pursuant to article 8 of the Navigation Law of the State of New York and article 6 of the Transportation Corporations Law of the State of New York requesting a license to operate a ferry service between Greenport, Suffolk County, New York and New London, Connecticut be granted to Mascony Transport and Ferry Service, Inc. (hereinafter called Mascony). The petition was served upon Harry J. Mitchell and Pauline Mitchell (hereinafter called Mitchell) and East End Supply Company, Inc. (hereinafter called East End) as persons entitled to notice of petition as they are owners of land through which that part of the highway adjoining the proposed ferry site runs.
The petition was originally noticed to be heard on January 4, 1978 and adjourned to February 1, 1978 for a conference which was attended by counsel for the petitioner and the respondent Mitchell and East End and counsel for Shelter Island & Greenport Ferry Company, Inc. (hereinafter called Shelter Island), the Village of Greenport, Inc. (hereinafter called Greenport), Commissioner of Transportation of the State of New York (hereinafter called D.O.T.), Cross-Sound Ferry Services, Inc. (hereinafter called Cross-Sound) and Bridgeport & Port Jefferson Steamboat Company, Inc. (hereinafter called Bridgeport) proposed intervenors. As a result of that conference, it was agreed that the court would, prior to taking any action with respect to the petition, decide first the question of jurisdiction and if jurisdiction was found in any *621 degree, then decide the questions of intervention. All parties agreed to serve and file pleadings, proposed pleadings, answers, replies and memoranda of law. The matter was set down for March 1, 1978 anc^ final papers were filed with the court on or about March 20, 1978.
Mascony filed a petition for an Interstate Commerce Commission certificate of public convenience and necessity on or about May 29, 1973. Its application was, after hearing, initially denied by the Administrative Law Judge of the I.C.C. Thereafter, and on or about October 19, 1975 at Mascony’s request, the proceedings were reopened and additional materials received by the Interstate Commerce Commission (hereinafter called I.C.C.). These materials consisted of: (1) a report by the New York Department of Environmental Conservation concerning the improvement of a ferry slip in Greenport Harbor; (2) a permit to improve the slip; (3) a letter dated August 15, 1974 from the City Manager of New London indicating that he expected city counsel approval for the city to enter into a contract for the use of the municipal pier as a docking facility; and (4) a lease between the applicant (Mascony) and the city.
At the same time the I.C.C. also ordered an evaluation be made of the effect of the proposed operation upon the environment. Subsequently, the I.C.C. limited the acceptance of items (1) through (4) above to consideration only as they apply to the environmental impact statement. Thereafter, and by a two to one decision, the Interstate Commerce Commission granted to the petitioner Mascony a certificate of public convenience and necessity dated November 3, 1977.
Bridgeport, Greenport, D.O.T. and Cross-Sound, as successor and interest to New London Freight Lines, Inc. (it appears from the I.C.C. decision that Cross-Sound did not participate in the fact finding hearings and that at one point, prior to Cross-Sound’s participation, the I.C.C. considered the application unopposed) participated in these proceedings. The decision of the Interstate Commerce Commission was appealed to the United States Court of Appeals and the appeal was denied.
Thereafter, on or about December 30, 1977, Mascony commenced this proceeding.
The proposed intervenor, Commissioner of Transportation of the State of New York, does not contest the statutory authority of the court to issue the license.
*622 The respondents Harry J. Mitchell and Pauline Mitchell and the proposed intervenors Cross-Sound and Bridgeport contend that the court does not have jurisdiction of the subject matter of the petition in that the Federal Government by part 3 of the Interstate Commerce Act has pre-empted the field and that the State of New York and this court have no authority to grant or withhold a license applied for arguing that the requirement to obtain a State license imposes a burden on interstate commerce and further that no State can require a certificate of necessity to engage in interstate commerce and, therefore, the petition must be dismissed.
The proposed intervenors, Greenport and East End, make similar contentions. Basically, these intervenors claim that the case law grants some limited jurisdiction with respect to regulating interstate ferries and to grant or withhold the franchising or licensing of such services, but since the enactment of part 3 of the Interstate Commerce Act (US Code, tit 49, § 901 et seq.) in 1940, the Federal Government has preempted the field in this respect in that Congress has exercised jurisdiction over "water carriers” and that the petitioner Mascony is a "common carrier by water” and, therefore, exclusively under the jurisdiction of the I.C.C. The above respondents and proposed intervenors in taking this position assert that the court cannot render any decision with respect to the fitness of the petitioner or the necessity for its service.
It should be noted parenthetically that the proposed intervenors Cross-Sound and Bridgeport operate a service similar to the one herein proposed by the petitioner and do not have licenses issued by the State of New York, nor have they applied for any. The petitioner itself takes the position that the court may grant the license or withhold the license from petitioner, but that in any event, the court’s action would be mere surplusage to the action taken by the I.C.C. and any authority that might be conferred upon the petitioner by the issuance of the license has already been conferred on the petitioner and, further, that the court is bound by the findings of fitness and necessity made by the I.C.C., that it must grant or deny the application on the papers submitted without further inquiry. All other respondents make similar contentions, that is: (1) the court does not have jurisdiction of the subject matter; (2) that the Federal Government by the enactment of part 3 of the Interstate Commerce Act (1940) has pre *623 empted the field; (3) that the issuance or denial of the license by this court is a burden upon interstate commerce.
It is undisputed that a certificate of convenience and necessity was granted to the petitioner herein on October 7, 1977 and that thereafter, and on December 30, 1977, the petitioner filed a petition with the court seeking a State license. It is also undisputed that all of the factual hearings were concluded in 1973 and were based upon the needs of the public that existed at that time and that most, if not all of the facts in support of public need, were based on the circumstances that existed and the transportation offered in 1972 and 1973.
The petitioner could have applied for this license prior to the I.C.C. application or simultaneously therewith or upon the conclusion of the I.C.C. proceedings. Petitioner elected to file upon the conclusions of the I.C.C. proceedings.
The right to regulate interstate commerce has been granted by the several States to the United States Government in section 8 of article I of the Constitution of the United States. That right has, from time to time, been implemented by Congress in the enactment of various laws, one of which is the transportation law (US Code, tit 49) governing interstate transportation by rail, motor, water, and air.
The relationship between the States and the Federal Government in interstate transportation by water has been defined by various cases brought before the Supreme Court of the United States. One of the earliest and perhaps one of the best known cases is Gibbons v Ogden (9 Wheat [US] 1) wherein the court found among other things that Congress’s right to regulate commerce among the States included the right to regulate the transportation of passengers and freight over boundary waters separating the States and at the same time and in the same case held that the right to license ferries was one of those rights reserved by the States to themselves under the Tenth Amendment of the United States Constitution.
The court later confirmed in the case of Conway v Taylor (1 Black [US] 603), holding specifically that the State had the right to issue a ferry license or franchise to ferries departing from its shores (cf. St. Clair County v Interstate Transfer Co., 192 US 454). Later cases further defined the right and the power of the Federal Government over interstate commerce by holding for instance in the Gloucester case (Gloucester Ferry Co. v Pennsylvania, 114 US 196) that a State could not *624 impose a tax on the business of interstate transportation and while recognizing a State’s right to issue a franchise or ferry license held that in so doing it could not burden interstate commerce. Later, in the case of Sault Ste. Marie v International Tr. Co. (234 US 333), the court held that a municipality of a State could not require (emphasis supplied) a license for the purpose of conducting a ferry in interstate commerce at the same time recognizing the fact that the company in that case was duly licensed in the Dominion of Canada. Again, in the case of Mayor of Vidalia v McNeely (274 US 676), the court held in effect that the State could not interrupt interstate commerce by ferry by refusing to renew an existing ferry license.
It appears then, absent Federal legislation that a State has the right to grant a ferry license but in so doing may not burden interstate commerce. The petitioner herein is not presently engaged in interstate commerce but holds a certificate of public convenience and necessity from the Interstate Commerce Commission pursuant to section 909 of part 3 of the Interstate Commerce Act (US Code, tit 49) authorizing petitioner to engage in interstate commerce as a common carrier by water between Greenport, Suffolk County, New York and New London, Connecticut. The petitioner has applied for a license pursuant to the applicable provisions of the New York State law.
The applicable New York State statutes provide where pertinent:
"The county court in each of the counties of this state or the city court of a city, may grant licenses for keeping ferries in their respective counties and cities, to such persons as the court may deem proper” (Navigation Law, § 110).
"A ferry corporation is a corporation organized to operate a ferry, wholly within or partly without this state.” (Transportation Corporations Law, § 70.)
"Any such corporation shall have the power to take by grant or by assignment a franchise or right to establish and operate a ferry or ferries” (Transportation Corporations Law, §71).
"A person who: 1. Maintains a ferry for profit or hire upon any of the waters of this state without authority of law * * * Is guilty of a misdemeanor” (Navigation Law, § 114).
The court finds that the foregoing statutes do not place a *625 burden on interstate commerce. The court in so holding realizes that its decision in granting or withholding the license in no way impedes the implementation of the authority granted by the I.C.C. to the petitioner herein.
The court is keenly aware that the several States cannot act in such a matter as to burden interstate commerce; however, the court finds no authority wherein it must grant a license, franchise or power to any individual which license would place said individual in a place superior to any other individual merely because it is engaged in interstate commerce.
The court’s attention is directed to part 3 of the Interstate Commerce Act (US Code, tit 49, § 901 et seq.) and it is argued that the Congress has, by enacting this legislation, pre-empted the State from issuing this license. In this connection the court notes that section 903 (subd [g], par [2]) of said act states as follows: "Except to the extent that the Commission shall from time to time find, and by order declare, that such application is necessary to carry out the national transportation policy declared in this Act, the provisions of this chapter shall not apply * * * (2) * * * to ferries”.
The court has studied all the papers presented in this matter and nowhere does it appear that the I.C.C. has either found or by order declared that the application of part 3 of the Interstate Commerce Act is necessary to carry out the national transportation policy with respect to this petition or to ferries generally.
The petitioner herein applied to the I.C.C. for and received a certificate of public convenience and necessity to act as a "common carrier by water”. Such authority from the commission is not a license to operate a public ferry (Inhabitants of Beals v Beal (149 Me 19). Nor does the certificate issued purport to be such. Moreover, the majority decision of the I.C.C. states in part: "Applicant must determine where it will actually dock in Greenport, improve the landing point to allow its ferries to dock, secure and improve suitable staging areas, comply with various local, state, and federal regulations and secure appropriate permits. We are in no position to comment on the merits of such applications for permits and our decision should not be interpreted as commission support or lack of support for such applications.”
Therefore, the court concludes that the petitioner applied for and received authority to act as a common carrier by water and not as a ferry service.
*626 The court finds no case denying the States’ right to issue a ferry license although the St. Clair County case (192 US 454, supra) seems to indicate that the Supreme Court might interpret the Ogden decision otherwise. It did not do so and the court notes that Congress in enacting part 3 of the Interstate Commerce Act excluded ferries from the application of that act. The I.C.C. in its decision conditioned the authority granted upon the petitioner’s ability to obtain local permits and comply with local, as well as, Federal law. This court has jurisdiction of the subject matter of the petition.
The court recognizes that there were factual hearings held before the I.C.C. in 1973 and that the commission’s determination was based upon the facts presented therein. Those facts relate to the situation which existed in 1972 and 1973, approximately five years ago. Moreover, Cross-Sound, although successor in interest to New London Freight Lines, Inc., did not actually participate in the hearings and the Interstate Commerce Commission was of the opinion that Mascony’s application to it was virtually unopposed. (Mascony Transport & Ferry Serv., Inc. Initial Operations-New London to Greenport, L. I., New York, Interstate Commerce Commission Reports, No. W-1270, Nov. 3, 1976, 353 I.C.C. 60.)
In view of these facts and the fact that a State license may carry with it certain privileges and rights which do not necessarily flow from the I.C.C. certificate of public convenience and necessity the court will determine on the facts as they presently exist, whether there is necessity and whether the petitioner is a proper party within the meaning of the New York State law.
With respect to intervention the court finds that the proposed interveners Bridgeport & Port Jefferson Steamboat Company, Inc. and Cross-Sound Ferry Services, Inc. being parties that operate a similar service between the County of Suffolk and the State of Connecticut are interested parties and that their property rights may be affected by the order of the court. With respect to the Incorporated Village of Greenport the court finds that the petitioner seeks to locate its ferry service in its said village and insofar as it appears in the papers and the decision of the I.C.C. substantial changes will have to be made with respect to certain portions of the village in close proximity to the business area and that the petitioner, herein, must obtain other local permits and comply with other *627 local regulations and, therefore, the Incorporated Village of Greenport is an interested party and will be permitted to intervene. Shelter Island & Greenport Ferry Company, Inc. operates a ferry service between Greenport and Shelter Island. The course by its ferries will be crossed by and crosses the course which must be utilized by the petitioner herein in operating its ferry service from the site presently proposed. To the extent that intervenor’s operations may be interrupted and its revenue affected said company is an interested party and will be permitted to intervene. The State of New York is a party to the action. The petitioner seeks a license from this court through the power delegated to it by the State of New York in the Navigation and the Transportation Corporations Laws. The Commissioner of Transportation has statutory and constitutional rights and duties with respect to transportation in the State of New York and such as an interested party will be permitted to intervene.
There are among the papers, allegations that the petition herein is premature by reason of the fact that the petitioner has not received all local permits necessary to its operation. This allegation is sometimes coupled with the fact that the petitioner claims a right of eminent domain under a State license, if issued.
The petitioner comes before this court as claiming to be a suitable person within the meaning of the law that the service he offers is a necessary service. The petitioner has a duty of establishing these facts. It would appear to the court that the petitioner’s ability to carry out this service is one that should properly be raised in opposition to the petition and should be considered in that light. The court will not summarily dismiss the petition and finds that the allegations raised in the papers present a question of fact to be determined at the hearing.
The court has examined the petition and finds that the essential elements for an application under section 114 of the Navigation Law and section 71 of the Transportation Corporations Law have been sufficiently alleged and finds the petition to be sufficient.
All motions seeking dismissal of the petition for insufficiency are denied. All motions with respect to summary judgments are denied.