FILED
April 24, 2015
Third Court of Appeals
Jeffrey D. Kyle
Clerk

**CAUSE NO. 03-15-00092-CR**

IN THE
THIRD COURT OF APPEALS
AT AUSTIN

Leverson v. State of Texas

Original Proceeding from the Austin Municipal Court,
Judge Sherry Statman, Presiding
Cause Numbers 7827974, 7827976, 7827977
Initial Appeals Proceeding from the Travis County Court at Law #1
Judge J. David Phillips, Presiding
Cause Numbers C-A-CR-14-100034, C-A-CR-14-100035, C-A-CR-14-100036

Appellant's Brief on the Merits

**ORAL ARGUMENT REQUESTED**

Christopher Leverson
313 Middle Lane
Austin, Texas 78753
Telephone: (512) 990-1568
E-mail: Admin@WirelessElevation.com

*Pro Se Litigant*


RECEIVED
APR 0 3 2015
THIRD COURT OF APPEALS
JEFFREY D. KYLE

# IDENTITY OF PARTIES AND COUNSEL

Pursuant to Texas Rules of Appellate Procedure 38.1(a), appellant presents the following list of all parties and names and address of its counsel:

**Appellant/Defendant:**

Christopher Leverson

**Counsel:**

Christopher Leverson

313 Middle Lane

Austin, Texas 78753

Telephone: (512) 990-1568

E-Mail: Admin@WirelessElevation.com

**Respondent #1:**

Judge Sherry Statman

Austin Municipal Court

700 East Seventh Street

Austin, Texas 78701

**Respondent #2:**

Judge J. David Phillips

Travis County Court at Law #1

1000 Guadalupe Avenue

Austin, Texas 78701

**Appellee/Prosecution:**

Mathew McCabe

**Counsel:**

Meagan T. Harding

Assistant City Attorney/City of Austin

700 East Seventh Street

Austin, Texas 78701

Telephone: (512) 974-1343

Facsimile: (512) 974-1244

Karen Kennard

Austin Attorney

300 West Second Street

Austin, Texas 78701

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL ....................................................... 2

TABLE OF CONTENTS............................................................................3

TABLE OF AUTHORITIES..........................................................................5

MOTION TO TAKE JUDICIAL NOTICE.........................................................8

OBJECTION TO THE ORIGINAL COURTS JURISDICTION............................. 8

STATEMENT OF THE CASE........................................................................9

STATEMENT REGARDING ORAL ARGUMENTS...........................................10

ISSUES PRESENTED...............................................................................11

STATEMENT OF FACTS............................................................................12

SUMMARY OF THE ARGUMENT.................................................................14

ARGUMENT..........................................................................................16

Issue #1: Are municipal courts of record required to obey statutes specifically written for municipal courts of record? Can those statutes be disregarded for convenience of the court?...............................................................................16

Issue #2: What constitutes a proper charging instrument and is a Complaint sufficient to satisfy the defendant's right to know the nature and cause of the charges being made against him?.................................................................18

Issue #3: Does the Court have personal jurisdiction over those who are not engaged in the regulated activity governed by the specific regulatory code?...........23

A. What does "transportation" mean?................................................. 23

B. What does "vehicle" mean?........................................................... 24

C. What does "motor vehicle" mean?.................................................. 24

D. What does "drive" mean?.............................................................. 24

E. What does "operator" mean?......................................................... 25

F. What does "this state" mean?......................................................... 25

Issue 4: Does a defendant have the right to remain silent or can he be forced to provide evidence to avoid further criminal charges?.........................................30

3

Issue #5:  Upon the recognition of a failed discovery by the prosecutor, and an "entirely erroneous ruling" by the trial court, was the Appellant's right to due process denied?............................................................................................34

PRAYER............................................................................................40

# TABLE OF AUTHORITIES

**Cases**

*Alvarado v. Farah Mfg. Co., 830 S.W. 2d 911, 914 (Tex. 1992)* ................................................. 15,36

*Baer v. USA, 503, F. 2nd 393* ................................................................................................. 8

*Barnam v. SuperiorCourt of California, County of Marin, 110 S. Ct. 2105 (1990)* .................. 8

*Bass v. State, 427 S.W.2d 624, 626 (Tex. Cr. App.) 1968* ............................................. 10, 20, 21

*Basso v. Utah Power and Light Co., 495 2nd 906 at 910 (10th Cir,) 1974* ............................ 8

*Board of Comm'rs of Bryan Cty. v. Brown 520 U.S. 397 (1997)* ..................................... 24

*Cornell Steamboat Co. v. United States, 321 U.S. 634, 641 (1944)* ............................... 10,23

*Evans v. State, 623 S.W.2d 924, 925 (Tex.Crim.App.1981)* ........................................ 14, 19, 21

*Ex parte Greenwood, 165 Tex. Cr. R. 349, 307 S.W.2d 586 (Tex. Cr. App.) 1957* ......... 10, 20, 21

*F & H Invs., Inc. v. State, 55 S.W.3d 663, 669 (Tex. App.-Waco 2001, no pet.)* ............... 15,36

*Graham v. Lappin, 255 F.3d 906 (7th Cir. 2001)* ....................................................... 23,25

*Hagens v. Lavine, 415 US 533* ............................................................................................. 8

*Haines v. Kerner, 404 US 519 (520) 1972* ........................................................................... 8

*Hoffman v. United States, 341 U.S. 479, 486, 71 S. Ct. 814, 95 L. Ed. 1, 18 (1951)* ......... 14,31

*Huynh v. State, 901 S.W. 2d 480, 482 (Tex. Crim. App.) 1995* .................................... 20, 21

*International Shoe v Washington, 326 US 310 (1945)* ................................................. 8, 14

*King v. State, 473 S.W.2d 43, 47 (Tex.Crim.App.1971)* ............................................. 14, 18

*Kothe v. State 152 S.W. 3d 54,63 (Tex. Crim. App. 2004)* ........................................... 31

*Labelle v. State, 720 S.W.2d 101, 106 (Tex.Crim.App.1986)* ..................................... 14, 18, 21

*Maynard v. Texas*, 249 S.W. 473 (Tex. Crim. App. 1923) ........................................... 10, 21

*Melo v. United States, 505 F. 2nd 1026 (8th Cir.) 1974* ................................................. 8

*Miranda v. Arizona, 86 S. Ct. 1602, 384 U.S. 436 (1966)* ........................................... 14, 31

*Naff v. State, 946 S.W. 2d 529, 533 (Tex. App. – Fort Worth 1997)* ............................ 26, 31

*Ogden v. Saunders*, 25 U.S. (12 Wheat.) 213 (1827) ....................................................... 25

*Palmary v. State* UNPUBLISHED ....................................................................................... 20,21

Saathoff v. State, 891 S.W.2d 264, 266 (Tex.Crim.App.1994) ........................................ 14, 19, 21

*Sherar v. Cullen, 481 F. 2d 946 (1973)* ........................................................................ 14, 33

*Simmons v. United States, 390 U.S. 377 (1968)* ........................................................... 14, 33

*St. Clair Cnty v. Interstate Sand & Car Transfer Co.*, 192 U.S. 454 (1904)....................10, 23

*State v. Moff, 154 S.W. 3d 599, 601 (Tex. Crim. App. 2004)*.........................................20,21

*Terry v. Ohio*, 392 U.S. 1 (1968)..........................................................................................24

*Thompson v. State, 697 S.W.2d 413, 415 (Tex.Crim.App.1985)*...............................14, 18, 21

**Statutes**

Code of Criminal Procedure Chapter 2.01.............................................................................38

Code of Criminal Procedure Chapter 21.02...........................................................................21

Code of Criminal Procedure Chapter 21.03......................................................................10, 19

Code of Criminal Procedure Chapter 21.04.......................................................................20,21

Code of Criminal Procedure Chapter 21.21...........................................................................21

Code of Criminal Procedure Chapter 27.01.................................................................10, 18, 21

Code of Criminal Procedure Chapter 39.14...........................................................................35

Code of Criminal Procedure Chapter 45.002.........................................................................18

Code of Criminal Procedure Chapter 45.018.....................................................................10, 21

Code of Criminal Procedure Chapter 45.019..................................................................10, 19, 21

Code of Criminal Procedure Chapter 45.201(d) ....................................................................38

Government Code Chapter 30.00007.................................................................................16, 17

Texas Constitution Article 1 Section 10............................................................................10, 18

Texas Constitution Article 1 Section 29.................................................................................20

Texas Constitution Article 5 Section 12(b)........................................................................14, 18

Transportation Act of 1940, 54 Stat. 898, 929, 49 U.S.C. § 902(i)(1), in particular § 302(i)(1)...23

Transportation Code § 501.002(17)..................................................................................10, 24

Transportation Code § 502.001(25) ...............................................................................10, 24, 28

Transportation Code § 521.025 (a)(2) ...................................................................................31

Transportation Code § 522.003(11) ................................................................................10, 24

Transportation Code § 522.003(21) .......................................................................................24

Transportation Code § 541.001(1) ................................................................................10, 25, 28

Transportation Code § 541.201(11) ................................................................................10, 24

Transportation Code § 541.201(23) ................................................................................10, 24, 28

Transportation Code § 601.002(5) .................................................................................10, 24, 25

Transportation Code § 621.001(9)......................................................10, 24, 28

Transportation Code § 642.001(1) ....................................................10, 24, 25

Transportation Code § 647.001(4) ....................................................10, 24, 25

Transportation Code § 683.001(4) ........................................................10, 24

Transportation Code § 728.001(2) ........................................................10, 24

Transportation Code § 750.003(a) ....................................................10, 24, 28

## MOTION TO TAKE JUDICIAL NOTICE

Appellant requests the court to take judicial notice of *Haines v. Kerner, 404 US 519 (520)*
*1972*, which held that Pro Se pleadings are held "to less stringent standards than formal
pleadings drafted by lawyers." Appellant, therefore, begs the court to consider the central theme
of arguments made by Appellant, and to not render decisions or offer opinions based on the lack
of formality or style of the arguments made.

## OBJECTION TO THE ORIGINAL COURTS JURISDICTION

Appellant asserts his special appearance, and objects to the original court's subject matter
jurisdiction, personal jurisdiction, and venue. *Basso v. Utah Power and Light Co., 495 2nd 906 at*
*910 (10th Cir,) 1974* held that jurisdiction can be challenged at any time, even on final
determination. "Before a court can exercise power over a party, the constitution requires that the
party have certain minimum contacts with the forum in which the court sits. *International Shoe*
*v Washington, 326 US 310 (1945)* A judgment rendered by a court without personal jurisdiction
over the defendant is void. It is a nullity.

Since "Jurisdiction must appear as proved on the face of the record" *Baer v. USA, 503, F.*
*2nd 393* and "Once jurisdiction is challenged, it must be proven." *Hagens v. Lavine, 415 US 533*
Appellant, at all phases of this prosecution, challenged jurisdiction, including personal (Im
personam) jurisdiction, however, the State, failed to offer any proof, whatsoever, of personal
jurisdiction in this matter, Appellant objects to the original court's jurisdiction and moves this 3rd
Court of Appeals to dismiss this case for lack of jurisdiction, as "Judgment of a court lacking
jurisdiction is void." *Barnam v. SuperiorCourt of California, County of Marin, 110 S. Ct. 2105*
*(1990)* and "Once jurisdiction is challenged, the court cannot proceed when it clearly appears the
court lacks jurisdiction, the court has no authority to reach merits." *Melo v. United States, 505 F.*
*2nd 1026 (8th Cir.) 1974.*

8

# STATEMENT OF THE CASE

**Nature of the Case:** Appellant/Defendant was charged with numerous violations of the Texas Transportation Code. These violations were, "Expired Registration", "Fail to Display Driver's License", and "Fail to Maintain Financial Responsibility" (CR 7) He was tried in the Austin Municipal Court. Appellant, then, appealed the court's decisions to Travis County Court at Law #1.

**Respondent #1:** Judge Sherry Statman, Austin Municipal Court, Austin, Texas.

**Respondent's Action:** February 19th, 2014, following a jury's determination of guilt, the trial court entered final judgments of fines levied upon Appellant. (CR 115)

**Respondent #2:** Judge J. David Phillips, Travis County Court at Law #1, Austin, Texas.

**Respondent's Action:** December 18, 2014, Travis County Court at Law #1 upheld the final judgment of the Austin Municipal Court.

# STATEMENT REGARDING ORAL ARGUMENTS

This case raises significant and complex issues related to the court's jurisdiction, the rights of the defendant, and the nature and scope of the laws related to the Texas Transportation Code, including the applicability of regulatory statutes[1] to those who are not engaged in the regulated activities governed by those specific statutes. Appellant believes that the inclusion of oral arguments will significantly aid the decision of this court.

Previous arguments, briefs, and responses made or submitted by the Prosecutor, and/or the Appellee, as well as decisions and statements made by the presiding judge and appeals court judge suggest that due to the inexperience of the pro se Appellant, the written motions and arguments made by the Appellant may have failed to properly communicate the central theme of the arguments being presented by the Appellant. This miscommunication has led to previous court's decisions that Appellant believes to be non-sequitur or specious to his intended arguments.

During oral arguments, Appellant will present arguments related to the right of a defendant to proper and timely notice of the complaint and a proper charging instrument[2] and the right to know the nature and cause of the charges being made against him, pursuant to the Texas Constitution Article 1 Section 10 and 29, Article 5 Section 12 (b) and 17, and Code of Criminal Procedure 1.05, 1.14, 2.05, 15.05, 15.17, 21.03, 21.20-23, 27.01, 27.14(d), 27.17, 28.01, 45.018(b), 45.019, and in opposition to *Ex parte Greenwood, 165 Tex. Cr. R. 349, 307 S.W.2d 586 (Tex. Cr. App.) 1957, Bass v. State, 427 S.W.2d 624, 626 (Tex. Cr. App.) 1968.*

Oral arguments will also allow Appellant to present the complex arguments related to the Transportation Code and allow him to parse the difference between the regulation of the commercial activity[3] of driving or operating of a motor vehicle on the highways and byways of this State and right of travel related to the private, personal[4] activity of traveling in an automobile on the public's roads of the State of Texas. Transportation Code 501.002(17), 522.003 (11 and 17), 502.001(21), 541.001(1), 541.201(11 and 23), 601.002 (5), 621.001(9), 642.001(1), 647.001(4), 683.001(3), 728.001(2), 750.003(a), *Cornell Steamboat Co. v. United States*, 321 U.S. 634, 641 (1944) (Frankfurther, J., dissent), *Maynard v. Texas*, 249 S.W. 473 (Tex. Crim. App. 1923), *St. Clair Cnty v. Interstate Sand & Car Transfer Co.*, 192 U.S. 454 (1904).

---

1- Transportation Code
2- An Information or Indictment
3- Transportation
4- Non-Commercial

10

# ISSUES PRESENTED

1. Does the court err when it disregards statutes written specifically for said court?

2. Does the court violate a person's due process rights when it disregards statutes written specifically for said court?

3. Can a Complaint be substituted for a charging instrument?

4. What constitutes a proper charging instrument that invests the court with jurisdiction?

5. Is a Complaint sufficient to satisfy the rights of the accused to know the nature and cause of the charges set against him?

6. Can a Complaint, submitted by a court clerk, be the initial pleading of the State that invests the court with jurisdiction?

7. What does "Transportation" mean?

8. Is the definition of "Transportation" relevant to the Transportation Code?

9. What are the limits of the Transportation Code's scope?

10. Can private, non-commercial, activities be regulated by commercial codes?

11. Are all automobiles legally considered to be motor vehicles in the Transportation Code?

12. Are all motor vehicles required to be registered as motor vehicles?

13. Do citizens have a right to remain silent if they believe the evidence to be incriminating?

14. Can the State hold a citizen criminally liable for invoking a right?

15. Is a failure to disclose required documents, reversible on its face?

16. Can a jury disregard the entire testimony of State's only witness?

17. Are there any consequences for a public servant or official making knowingly false statements to the court?

18. Are there any consequences for a public servant or official advancing knowingly improper arguments?

19. Are there any consequences for a public servant or official knowingly violating provisions of state statute?

# STATEMENT OF FACTS

On December 20th, 2012, Christopher Leverson (Appellant) was pulled over by Arresting Officers following a random database search of his license plate which allegedly showed his Motor Vehicle registration to be expired. Arresting Officers then demanded Appellant's driver's license and "insurance". In response to these demands for documentation, Appellant invoked his Fifth Amendment right to refuse to provide any evidence that he believed would be used against him at court and asked for an attorney to be present during any further questioning or interrogation. Appellant was then taken into custody and taken to the Travis County jail and was accused, not cited, by Arresting Officers of "Expired Registration", "Driver's License – Fail to Display", and "Failure to Maintain Financial Responsibility." A search of Appellant's automobile, following arrest, did yield Appellant's valid driver's license. Clerks for the Austin Municipal Court submitted complaints for the aforementioned allegations and filed them with the Austin Municipal Court[1.] Appellant never received a copy of any citations issued by Arresting Officers, nor was Appellant properly served with a copy of these complaints. No proper charging instrument was filed or exists in this case.

On February 14th 2012, a motions hearing was held where Judge Mitchell Solomon denied numerous motions filed by Appellant challenging subject matter jurisdiction, personal jurisdiction, and venue, as well as motions to dismiss for various violations of due process. Appellant believes the court erred and therefore violated Appellant's right to proper due process of law by denying these motions.

On February 19th 2014, the trial court heard the case with jury present. During this hearing, State's only witness was discovered to be testifying using an "incident report" related to this case. This incident report was demanded during discovery, then again in a motion to compel discovery, but was not turned over by Appellee. Appellant objected to the use of this document and the use of testimony given by States only witness using this document. Appellant believes the court erred when the court overruled this objection and allowed the jury to consider this testimony.

---

1 – Trial court

12

On July 21st 2014, Appellant filed an appeal brief asking the Travis County Court at Law #1 to overturn the trial court decisions and judgments based on 12 points that the Appellant believes the lower court erred. On December 18th 2014, the Travis County Court at Law #1 upheld the decisions of the lower court and rejected all 12 of the arguments made by Appellant. Appellant believes the Travis County Court at Law #1 failed to properly consider the arguments being presented and rendered erroneous decisions that were not properly founded in established statute, case law or court precedent.

Appellant has appealed to the Third Court of Appeals at Austin asking the Appellate Court overturn the trial court's and initial appellate court's judgment.

# SUMMARY OF THE ARGUMENT

Issue #1 – The court errs when it fails to conform to the state statutes written specifically to govern the procedures of the court. This failure results directly and indirectly in due process violations which cause demonstrable harms that warrant reversal or decisions that negatively impact the accused.

Issue #2 – The court erred when it overruled objections to the Complaint being used as a charging instrument in this case. Using *Labelle v. State, 720 S.W.2d 101, 106 (Tex.Crim.App.1986); Thompson v. State, 697 S.W.2d 413, 415 (Tex.Crim.App.1985); King v. State, 473 S.W.2d 43, 47 (Tex.Crim.App.1971)*, and Texas Constitution Article 5 Section 12(b) an information or an indictment, the initial pleading of the State, invest the court with jurisdiction of the cause. A Complaint which lacks several requisites of a proper charging instrument is "fundamentally defective" as a charging instrument and therefore cannot serve as a charging instrument that invests the court with jurisdiction. *Saathoff v. State, 891 S.W.2d 264, 266 (Tex.Crim.App.1994); Evans v. State, 623 S.W.2d 924, 925 (Tex.Crim.App.1981)*. No charging instrument means no subject matter jurisdiction in this cause.

Issue #3 – The Transportation Code is a set of statutes that govern the commercial activity called transportation. The Transportation Code is limited in scope to those engaged in the regulated activity called "Transportation". Appellant was not engaged in Transportation nor was Appellant was engaged in any activity that can be regulated by the state and therefore the court lacks personal jurisdiction over the Appellant. *International Shoe v Washington, 326 US 310 (1945)* No personal jurisdiction means no jurisdiction of the court.

Issue #4 – The court erred when it failed to protect the Appellant's right to remain silent and permitted the State to charge Appellant with crimes based SOLELY on the invocation of a protected right. *Miranda v. Arizona, 86 S. Ct. 1602, 384 U.S. 436 (1966), Hoffman v. United States, 341 U.S. 479, 486, 71 S. Ct. 814, 95 L. Ed. 1, 18 (1951), Sherar v. Cullen, 481 F. 2d 946 (1973), Simmons v. United States, 390 U.S. 377 (1968).*

14

*Issue #5* – The court erred when it permitted testimony of State's only witness to proceed after revelations that witness was using documents required to be provided to Appellant during discovery, but were not produced. The penalty for a party's failure to respond to a discovery request is the mandatory exclusion of the evidence requested. *Alvarado v. Farah Mfg. Co., 830 S.W. 2d 911, 914 (Tex. 1992); F & H Invs., Inc. v. State, 55 S.W.3d 663, 669 (Tex. App.-Waco 2001, no pet.).*

# ARGUMENTS

**Issue #1: Are municipal courts of record required to obey statutes specifically written for municipal courts of record? Can those statutes be disregarded for convenience of the court?**

Austin Municipal Court[1] is a municipal court of record. Government Code Chapter 30, also known as the Municipal Courts of Record Act, contain statutes used to govern the procedural conduct of municipal courts of record, specifically. Austin Municipal Court has more than one municipal judge. Government Code Chapter 30.00007 deals with the appointment of a "Presiding Judge" in a municipal court of record where more than one municipal court judge exists, and prescribes specific duties to that "Presiding Judge" to maintain a "Central Docket". This statute includes the assignment of municipal judges to cases by the presiding judge as well as assigning temporary or substitute judges to these cases.

At every phase of the prosecution of this case, Appellant objected to what he referred to as "Round Robin style of Judicial Review" and at each phase of the prosecution asked the court to provide documentation that would show that a specific judge had been assigned to this case as the judge, a temporary judge, or substitute judge. At all phases of this case the objection was overruled and no documentation was presented or offered. In his initial appeal to the Travis County Court at Law #1, Appellant asked the court for remedy to this due process and statute violation and stated that "One judge would rule one way, and the next judge would completely ignore the previous ruling, allowed improper orders to stand, or outright disregard rulings ..." (Issue #4, Appellant's Brief at 23) The trial court overruled this objection at the motions hearing and at trial. Prosecution made no statements in opposition to this objection during the motions hearing or at trial. Appellee states that "due process does not require that a Defendant have one judge hear his case in its entirety" and "Appellant cites no statutory authority or case law for this proposition" ignoring the Appellant's Brief references to Government Code Chapter 30.00007 made in his "Respondent's Special Appearance and Formal Objection to Round-Robin Processing and Handling of This Matter" pleading filed on January 10th 2013.

---

1- Trial Court

16

While Judge Philips[1] did acknowledge that this is a "subject of some debate among lawyers" and that "some lawyers voice the same complaints that Appellant raises", the Appellate Court has suggested that because the Appellant failed to point out a specific harm, the municipal court of record may disregard the specific statute related to assigning cases as part of the "Central Docket" handling[2] in favor of "enhance(ing) the convenience of the court to the public and (to) assure the orderly and fair distribution of workload among judges." Appellant's issue was then overruled.

Had the Appellee raised the issue of a lack of harm in the Appellee Brief, Appellant would have been given an opportunity to clarify the specific harms that arose from this style of central docket handling in Appellant's response brief. However, since the argument was initially offered by the appellate court in its own decision, the court erred when it failed to consider the harms alluded to throughout the brief. For example, in the motions hearing, presided over by Judge Solomon, Appellant moved for discovery of the offense report, which the court rightly granted. When the offense report was not received from the prosecution, Appellant moved to compel discovery of the offense report, specifically. Prosecution insisted that all documents had been disclosed and the court denied the motion to compel as a result. During trial, presided over by Judge Statman, when the incident report was revealed, the prosecution insisted that it was "work product" and exempt from discovery requirements. The trial court judge held that it was "technically, … not discoverable at all," which the appellate court called "an entirely erroneous ruling." Clearly, this harm would not have resulted had the same judge that ordered the discovery of the offense report been allowed to rule on the objection made when the offense report was revealed. This a clear example of one judge completely ignoring and utterly rejecting the common sense rulings of a prior judge in favor of "an entirely erroneous" decision to avoid a dismissal or mistrial for lack of proper discovery and to continue with an improper prosecution.

---

1- Presiding Judge of the Appellate Court/County Court at Law #1
2- Government Code Chapter 30.00007

17

**Issue #2: What constitutes a proper charging instrument and is a complaint sufficient to satisfy the defendant's right to know the nature and cause of the charges being made against him?**

In Appellant's Brief to the initial Appellate Court, issues 5 and 7, Appellant argues that a complaint, alone, does not meet the criteria of a proper charging instrument which would invest the court with jurisdiction nor does a complaint satisfy the right of a defendant to know the nature and cause of the charges made against him.

The Texas Constitution Article 1 Section 10 states, "In all criminal prosecutions the accused ... shall have the right to demand the nature and cause of the accusation against him, and to have a copy thereof..."

The Texas Constitution Article 5 Section 12(b) states, "An indictment is a written instrument presented to a court by a grand jury charging a person with the commission of an offense. An information is a written instrument presented to a court by an attorney for the State charging a person with the commission of an offense. ... The presentment of an indictment or information to a court invests the court with jurisdiction of the cause." Case law supports this assertion. *Labelle v. State, 720 S.W.2d 101, 106 (Tex.Crim.App.1986); Thompson v. State, 697 S.W.2d 413, 415 (Tex.Crim.App.1985); King v. State, 473 S.W.2d 43, 47 (Tex.Crim.App.1971).*

Code of Criminal Procedure 27.01 states "The primary pleading in a criminal action on the part of the State is the indictment or information."

Code of Criminal Procedure 45.002 states, "Criminal proceedings in the justice and municipal courts shall be conducted in accordance with this chapter, including any other rules of procedure specifically made applicable to those proceedings by this chapter. If this chapter does not provide a rule of procedure governing any aspect of a case, the justice or judge shall apply the other general provisions of this code to the extent necessary to achieve the objectives of this chapter.

While Code of Criminal Procedure Chapter 45 does provide for local and specific statutes for complaints, there are no local and specific codes to be found regarding an information or indictment that would invest the court with jurisdiction nor are there any statutes that suggest that a complaint is, or can be, a primary pleading on the part of the State. Neither are there any statutes that would suggest that a complaint is a proper substitution for an information or an

18

indictment, therefore, CCP 27.01 is the controlling statute for initial pleadings of the State being an information or an indictment, and CCP 21sets forth the requisites for a proper charging instrument that, according to the Texas Constitution invests the court with jurisdiction of the cause.

It is an absurd miscarriage of justice to believe that a person is capable of being informed of the nature and cause of the charges against him by a document that only meets the specific criteria set forth in CCP Chapter 45.019, as it is absurd to suggest that a complaint filed by the clerk of the court is, or can be, the initial pleading of the State.

A. In this case, the complaint is signed and filed by a clerk of the court. In other cases, a complaint can be filed by anyone other than an Attorney for the State, i.e. individuals, police officers, witnesses, victims of crimes, etc. An information or an indictment is an initial pleading of an Attorney for the State, otherwise known as a "proper officer". This contradiction should be the first indication that a complaint cannot be substituted for an information or indictment, the initial pleading of the State.

B. A complaint is drawn up and filed by someone who is not required to have any background in the law, whereas an information or an indictment, a proper charging instrument, is drawn up by those learned in the law, capable of determining all the proper aspects of an criminal allegation and qualified to produce a document that meets the requirements of an information or an indictment. A failure to state all the elements that are to be proven and a failure to provide certainty of an offense means that a complaint falls short of the bar required to ensure that the defendant is properly informed of the nature and cause of the charges being made against him.

C. A complaint is not required to show all the elements which are to be proven in court, whereas an information or indictment requires that "everything should be stated in an indictment which is necessary to be proved." (CCP 21.03) *Saathoff v. State, 891 S.W.2d 264, 266 (Tex.Crim.App.1994); Evans v. State, 623 S.W.2d 924, 925 (Tex.Crim.App.1981)* Common sense would suggest that those who are not learned in the law would not be capable of meeting this requirement whereas those "proper officers" could, and are required to, meet this burden. A failure to meet this burden is a direct violation of one's due process right to know the nature and cause of the charges against him.

19

D. Complaints are not required to provide for certainty, whereas an information or an indictment "the certainty required in an indictment is such as will enable the accused to plead the judgment that may be given upon it in bar of any prosecution for the same offense," (CCP 21.04) the very basis for *Palmary v. State* cited in Appellee Brief.

Constitutionally speaking, even if a statute contained within tyhe Code of Criminal Procedure Chapter 45 did contain provisions for a complaint as a substitution for an information or indictment, a proper charging instrument, it would and should be rendered null and void as Texas Constitution Article 1 Section 29 states, "To guard against transgressions of the high powers herein delegated, we declare that everything in this "Bill of Rights" is excepted out of the general powers of government, and shall forever remain inviolate, and all laws contrary thereto, or to the following provisions, shall be void." Defendants in ALL criminal cases have the unalienable right to know that nature and cause of the allegations being made against him, and it would be a grave miscarriage of justice to continue to insist that a clerk of the court, alone, is capable of meeting the sophisticated and complex burden set forth within the Texas Constitution's Bill of Rights.

Appellee cites the *Huynh v. State, 901 S.W. 2d 480, 482 (Tex. Crim. App.) 1995* decision that a criminal complaint "serves as the sole charging instrument in municipal court." However, Appellee fails to address the issue that the determination of Huynh v. State is based strictly on opinions rendered in *Ex parte Greenwood, 165 Tex. Cr. R. 349, 307 S.W.2d 586 (Tex. Cr. App. 1957)* and *Bass v. State, 427 S.W.2d 624, 626 (Tex. Cr. App. 1968)* which rely on Code of Criminal Procedure 45.01 which was later repealed in 1999. Appellee offers no case law made after the repeal of CCP 45.01 and not based on case law supported by CCP 45.01 that would suggest that a "proper charging instrument" is a complaint, alone.

To set the bar for the requirements of a "proper charging instrument" Appellee makes references to *State v. Moff, 154 S.W. 3d 599, 601 (Tex. Crim. App. 2004)* that the charging instrument be "specific enough to inform the accused of the nature of the accusation against him so that he may prepare a proper defense." Appellee fails, however, to acknowledge that the charging instrument in question in the State v. Moff decision was an indictment, not a complaint. Appellee also cites *Palmary v. State* UNPUBLISHED "Notice of the nature and cause of an action against a criminal defendant is accomplished by the filing of a charging instrument if the

20

charging instrument is sufficient to give the accused adequate notice of the acts he allegedly committed, to bar a subsequent prosecution for the same offense, and to give notice of the precise offense with which he is charged." Appellee, again, fails to note that the charging instrument in question was not a complaint, rather an indictment and information. Appellee fails to refer to one single case, in proper context, that suggests that a complaint is or can be a "proper charging instrument."

The initial Appellate Court states that a "proper charging instrument" for a municipal court prosecution is one that satisfies CCP 45.018 "which is our current definition of the charging instrument that is used in a municipal court." However, the court fails to refer to any other statutory reference or any case references to support this opinion. The initial Appellate Court does acknowledge that Code of Criminal Procedure 45.01was repealed in 1999, but suggests that the repeal of the very statute used as the basis for Huynh v. State, Ex Parte Greenwood, and Bass v. State decisions plays no role in determining what does or does not qualify as a "proper charging instrument. "

It would seem that the Appellee and the initial Appellate Court would seek to conflate a complaint with an indictment or an information, and then suggest that as long as the complaint filed in the case meets the requisites of CCP 45.019, then it somehow meets the bar set forth in *State v. Moff, Palmary v. State, Lawrence v. State, Saathoff v. State, 891 S.W.2d 264, 266 (Tex.Crim.App.1994); Evans v. State, 623 S.W.2d 924, 925 (Tex.Crim.App.1981), Labelle v. State, 720 S.W.2d 101, 106 (Tex.Crim.App.1986); Thompson v. State, 697 S.W.2d 413, 415 (Tex.Crim.App.1985); King v. State, 473 S.W.2d 43, 47 (Tex.Crim.App.1971)* . It does not. Simply speaking, it is virtually impossible, at the very least most likely improbable, that any clerk of the court, having no required background or education in the law, could draw up and submit a document that would or could properly inform the defendant of the nature and cause of the allegations made against him, particularly given that the requisites in CCP 45.019 do not require such disclosures in a way that CCP 21.02-21.04 and 21.21 require. Further, it is absolutely absurd to consider a complaint filed by the clerk of the court to be the initial pleading by the State as set forth in 27.01. Where CCP45.018 and CCP 45.019 set local and specific standards for a complaint in lieu of CCP 15.05, it is wholly insufficient as a substitution for a proper charging instrument as set forth in CCP 21.

21

In this case specifically, Appellant received no citations from the Arresting Officers, was never properly served with a complaint and no proper charging instrument, an information or indictment, exists. At all phases of prosecution of this case, Appellant objected to the complaint being used as a charging instrument on the grounds previously discussed. On the day of trial, Appellant was unable to enter a plea for lack of any proper disclosure of the charges being made against Appellant, and objected to the court entering a plea on the Appellant's behalf, on the grounds that Appellant was not refusing to enter a plea, but was unable to do so for lack of notice of the nature and cause of the charges being made against him.

Appellant begs the court to end the "complaint is a charging instrument" charade and require the municipal courts to follow the laws as they are written and require these courts to meet their obligation to furnish defendants, upon demand by those defendants, with written documentation that clearly meets the standards of a proper charging instrument that invests the court with jurisdiction set forth in the Texas Constitution and the Code of Criminal Procedure. Judgment of a court lacking jurisdiction is void. No proper charging instrument, no jurisdiction. No jurisdiction, no judgment is possible.

**Issue #3: Does the Court have personal jurisdiction over those who are not engaged in the regulated activity governed by the specific regulatory code?**

### A. *What does "transportation" mean?*

The term "Transportation" is not defined in the Transportation Code.

What is the Transportation Code about? The "transportation" code nowhere defines "transportation." It's not that we can't come up with a definition. It's that when we do, we find that "transportation" is "commercial." Thus, where there's no definition, there's vagueness. But, there is a definition, if we look long and hard enough.

### Defined.

"Transportation" means removing people and/or property from here to there for profit or hire under the choice of law of the "place" called "this state."

### Removing People and/or Property.

Transportation Act of 1940, 54 Stat. 898, 929, 49 U.S.C. § 902(i)(1), in particular § 302(i)(1) . *Cornell Steamboat Co. v. United States*, 321 U.S. 634, 641 (1944) (Frankfurther, J., dissent).

### From Here To There.

*Maynard v. Texas*, 249 S.W. 473 (Tex. Crim. App. 1923) (context: unlawful "transportation" of intoxicating liquor).

### For Profit or Hire.

*St. Clair Cnty v. Interstate Sand & Car Transfer Co.*, 192 U.S. 454 (1904) (allegations regarding operating a ferry without a license).

### Under the Choice of Law of the "Place" Called "this State."

The entirety of STATE's regulatory authority, for anything, is limited to that "place" where circulating "funny money" is not flat out fraud, i.e., to the "place" called "this state." *Graham v. Lappin*, 255 F.3d 906 (7th Cir. 2001) (special maritime and territorial jurisdiction).

### The Generic Concept of "use."

If use were irrelevant, it'd be "fraud" to deny a mileage deduction, e.g., Sched. A., for "personal use" of the car. Since "personal use" is not deductible, it follows that use determines

"personal v. commercial" treatment and that "personal use" is not commercial in any context. Obviously, personal (non-commercial) use (i.e., travel) needs no "license."

## "Use" and the *Terry* Stop.

The ticketing officer never even tried to establish "transportation" use. He asked nothing about any driver's logbook, passenger manifest or any bill of lading. The executive must have authority to determine his/its authority, the police always have the authority to protect themselves. *Terry v. Ohio*, 392 U.S. 1 (1968), and the car used by the Appellant does has a license plate to establish reasonable suspicion of a motor vehicle being engaged in transportation. However, that's where the *Terry* authority ended, because Appellant was not engaged in "transportation," as he indicated at the initial onset time of the transportation stop.

## Deliberate indifference.

The arresting officers had not been taught that "transportation" regulations have limits. In the exact same way that Ramos and Compean were never taught about "this state" and the limits of their authority at the border, these officers were not taught the limits of the "transportation" regulations. "[A] violation of federal rights may be a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations." *Board of Comm'rs of Bryan Cty. v. Brown 520 U.S. 397 (1997)*

### B. What does "vehicle" mean?

TRANSP. CODE §§ 502.001(25), 541.201(23), 621.001(9), Sec. 750.003(a).

Translation: a conveyance used for "transportation" purposes.

Application of statutory algebra: If no "transportation," then no "vehicle."

### C. What does "motor vehicle" mean?

TRANSP. CODE §§ 501.002(17), 502.001(25), 522.003(21), 541.201(11), 601.002(5), 642.001(1), 647.001(4), 683.001(4), 728.001(2).

Translation: "Vehicle" with a motor.

Application of statutory algebra: If no "transportation," then no "vehicle;" if no "vehicle," then no "motor vehicle."

### D. What does "drive" mean?

TRANSP. CODE § 522.003(11).

The sole definition for "drive" in the entire "transportation" code is found in the "commercial driver's license" chapter, Ch. 522.

Translation: In the disciplined "transportation" code, "drive" means being behind the wheel of a "vehicle." In the TRANSP. CODE, "drive" means being behind the wheel of a "motor vehicle."

Application of statutory algebra: If no "transportation," then no "vehicle;" if no "vehicle," then no "motor vehicle;" if no "motor vehicle," then no "driving;: hence, no "driver."

### E. What does "operator" mean?

TRANSP. CODE § 541.001(1).

This "definition" is very confused. "Drives," which has meaning only with respect to a "motor vehicle," is juxtaposed with the concept of "physical control of a vehicle." Ultimately, it doesn't matter, here, but which is it: "vehicle" or "motor vehicle?" [1]

Translation: In the disciplined "transportation" code, "operator" is the one behind the wheel of a "motor vehicle." In the Transp. Code, "operator" is the one behind the wheel of either a "vehicle" or a "motor vehicle."

Application of statutory algebra: No "transportation?"—no "vehicle;" no "vehicle?"—no "motor vehicle;" no "(motor) vehicle?"—no "operator."

### F. What does "this state" mean?

Contrary to popular belief, "this state" isn't really a "place." It's a "choice of law." The "place" called "this state" is a "federal area" or a "federal zone," a "Constitution-free, maritime, commercial zone," associated with the "funny money" found in the 48 contiguous states, Alaska, Hawaii, American Samoa, Guam, the Northern Mariana Islands, Puerto Rico, the Virgin Islands, and all the rest of the territories and protectorates. The capital of "this state" is DC.

Without "this state," running the present "funny money" scam would be criminal. Thus, the fundamental "choice of law" to which "this state" refers is the Law of the Sea, to be distinguished from the "choice of law" associated with an honest system of weights and measures, Lev. 19:35-36, which is the Law of the Land. The Law of the Sea doesn't just apply; it applies only if there's an agreement that includes that choice of law. *Ogden v. Saunders*, 25 U.S. (12 Wheat.) 213 (1827); *Graham v. Lappin*, 255 F.3d 906 (7th Cir. 2001).

---

[1] See also §§ 601.002(8) ("motor vehicle"), 642.001(2) (same), 647.001(5) (same); § 724.001(11) (looks to a "motor vehicle" or watercraft, i.e., "transportation" activity); § 24.013(f)(2) (regarding aircraft).

<u>In application of these terms.</u>

There was never any "transportation" at issue. Since Appellant was not engaged in "transportation," there was no "vehicle," no "driver," no "motor vehicle," and no "operator." Therefore, there was never any authority to issue any "ticket." The prosecution, at trial, offered no evidence to support commercial activity, nor did the prosecution attempt to prove any aspects related to commercial activity for which the Transportation Code would apply. The trial court sustained all objections made by the prosecution to questions posed to the State's witness by the Appellant/Defendant related to commercial activity, and the trial court judge threatened Appellant/Defendant with charges of contempt of court when he repeatedly attempted to ask questions that would show he was not engaged in the regulated activity for which the Transportation Code applies.

Appellee, in the Appellee's Brief, either did not understand the arguments being made by the Appellant in the Appellant's brief or the Appellee sought to conflate the terms associated with the regulated commercial activity of transportation to which the regulatory code[1] applies with the private, non-commercial, activity of traveling in a private automobile on the public's roads. Appellee correctly states that "The State of Texas has the power to regulate driving on state highways ..." and "Driving on Texas Highways is a privilege and not a right, and is subject to reasonable regulation under the State's police power", where "driving" is considered a commercial activity related to transportation, and "highways" is the surface upon which the regulated commercial activity of "driving" a "motor vehicle" takes place. In a commercial context only, Appellee correctly cites *Naff v. State, 946 S.W. 2d 529, 533 (Tex. App. – Fort Worth 1997)*, however, at no time did Naff argue or deny that he was not engaged in the regulated commercial activity governed by the regulatory code known as the Transportation Code.

Appellee then correctly defines several terms within the code that regulates the regulated activity commonly known as "Transportation", and Appellee correctly states that Appellant was charged by complaint with violating three regulations within that code. Appellee then, however, states, "Appellant did not need to be actively engaged in commerce or in the movement of goods to be subjected to the laws of the State of Texas prescribing the "Rules of the Road" within the Texas Transportation Code." Appellee fails to cite any no statute or any case law in support of this contradictory claim. Appellee offers nothing to dispel the assertions made by Appellant in

26

the various motions referenced in the Appellant Brief, other than stating Appellee's own flawed legal opinion and beliefs. Appellant was neither actively nor passively engaged in commerce or commercial activity. Appellant was not engaged in the movement of goods, property, passengers, or people for compensation or hire. Appellant was not engaged in any regulated activity governed by the regulatory code known as the Transportation Code.

Similarly, the initial Appellate Court attempts the same conflation of engaging in a commercial activity of "driving" or "operating" a "motor vehicle" on the "highways" of "this state" with the non-commercial activity of traveling in a private automobile or conveyance on the public's roads. The court's opinion states, "Beginning in 1963, the State of Texas began a legislative program to revise its statutes into codes arranged by subject matter." Appellant agrees. The opinion goes on to state, "Prior to that time and continuing until very recently, the statutes of the State of Texas were arranged in a haphazard fashion, generally alphabetically by subject matter." Again, appellant agrees. "In 1995, the Texas Transportation Code was begun. Here, the Texas Legislature has codified or attempted to codify all statutes dealing with the subject of our waterways, the State Department of Transportation, county roads, municipal streets, turnpikes, mass transit, and our basic "rules of the road" that apply to all traffic." Once again, Appellant agrees.

Continuing, the court's opinion states, "The Transportation Code derives its contents from the old Vernon's Texas Civil Statutes from Article 46c-1 all the way to Article 6812j. It incorporates all the traffic offenses that used to be set out in Article 6701d. It now contains as much as the legislature could corral in the way of criminal and civil statutes related to transportation in Texas." Appellant continues to agree but notes the use of the word "transportation" in the court's own opinion. More simply stated that the Transportation Code deals with "transportation" in Texas. Again, continuing, "Because it is titled the "Transportation Code", some people have tried to engraft upon the definition that is not to be found in the Code. They suggest, and Appellant is among them, that because "transportation" is sometimes defined as "carrying goods or passengers for hire", they are exempt from the application of the "Transportation Code" unless the State can prove that they were involved in "Transportation" under their definition." Here, the court seems to suggest that while the Transportation Code was written to corral criminal and civil statutes related to transportation in Texas, transportation is not relative to the Transportation Code. This seems to be completely contradictory.

27

Continuing yet again with the court's opinion, "In fact, "Transportation" is never defined in the Texas Transportation Code. The Appellant here was not charged with being in "transportation". He was charged with driving a motor vehicle on a public roadway in violation of particular sections of the State law." Here, the court seems to go completely off the tracks. The term "driving" outside of Tx. TRANS Code Chapter 522, the chapter related to "commercial driver's licenses", is defined in terms of "operator" as "a person who drives or has physical control of a vehicle" ((TxTRANS. Code 541.001 (1)) where "vehicle", according to TRANSP. CODE §§ 502.001(25), 541.201(23), 621.001(9), Sec. 750.003(a), means a conveyance used for "transportation" purposes.

The "particular sections of State law" the court refers to is the "Transportation Code" which the court states, in its own words, are "statutes dealing with the subject of transportation" and the Code where, again court's own opinion, "the legislature could corral in the way of civil and criminal statutes relating to transportation in Texas." How is it possible that the court could suggest that Appellant was not being charged with being in transportation, but is being charged with violating the statutes that, in his own admissions, govern, relate, and specifically deal with transportation?

However, the court's contradictory assertions do not end there. The court's opinion continues, "Yet the bases (basis) of some of his points of error have to do with his desire to impose his understanding of the word "transportation" on the Texas Transportation Code. He complains that there is no "evidence of transportation". "Transportation" is totally irrelevant to his prosecution under the statutes." Further, "The definition of "Transportation" is irrelevant. The criminal charges against the Appellant ... are based on specific statutes. Those specific statutes contain the applicable definitions. Appellant is not free to apply his own."

Here the court fails to consider that many of the definitions that he refers to, those in the Transportation Code, make reference to other words defined in the Transportation Code that use the very term, "transportation" in their definition, "vehicle" for example. If a "vehicle" is to be used in "transportation" by statute definition, it makes perfect sense that "transportation" and the definition thereof is completely relevant. Similarly, any statutorily defined term using the word "vehicle" in its own definition, such as "drive" or "operate", by statutory construction, makes the term "transportation" equally relevant. "Transportation", and the definition thereof, must be relevant, and can be defined and has been above using precedent and case law. If the term

28

cannot be defined, the entire Transportation Code would be unconstitutional for being "vague and ambiguous".

Most troublesome here is that the court makes this entire argument without any statutory or case law support. The entire argument is a flawed legal theory, an opinion, based in no facts, no statutes, no laws, and no case citing. It should be either further clarified or completely disregarded as mere opinion. Appellant asks this court to reject it completely.

The court does make references to "special citations" that are issued to "commercial vehicles" or "drivers that hold commercial driver's licenses", however, the court fails to consider that these "special citations" deal with the operation of vehicles of a certain size, seating capacity, or the involvement of moving hazardous materials, and do not parse the difference between commercial and non-commercial activities in any way that would invalidate the argument made by Appellant. Similarly, Chapter 522 of the Transportation Code does regulate "Commercial Driver's Licenses" but this chapter deals strictly in vehicles of a certain size, seating capacity, or hazardous materials handling, not the engagement of commercial driving activity versus non-commercial activity. More clearly stated, a pizza delivery driver, or a cab driver, those of a specific commercial capacity, must possess a driver's license issued under Chapter 521. However, these drivers are not required to meet any requirements under Chapter 522, Commercial Driver's Licenses, unless the vehicle used to deliver pizzas or drive passengers for compensation or hire exceeds a specific weight, seating capacity, or involves the movement of hazardous materials.

The trial court and the initial Appellate Court erred when it insisted that the Transportation Code regulates anything other than transportation, and further errors when it suggests that transportation is anything other than a commercial activity, or completely irrelevant to this case.

**Issue 4: Does a defendant have the right to remain silent or can he be forced to provide evidence to avoid further criminal charges?**

After being pulled over for an alleged "expired registration," the arresting officers demanded Appellant produce his driver's license and "insurance". Appellant then invoked his 5th Amendment right to remain silent and to refuse to provide any evidence which he believed would be used against him in a court of law. Appellant additionally requested that an attorney be present prior to any further questioning or interrogations. As a result of this refusal, Appellant was taken into custody, confined in the Travis County Jail, had his automobile searched, and additionally charged with "Driver's License – Fail to Display" and "Failure to Maintain Financial Responsibility". During the trial, the State's witness (Officer Larry Vest) testified that Appellant did invoke his 5th Amendment right to refuse to provide evidence that he believed would be used against him in a court of law.

Appellant argues that those who voluntarily engage in the regulated commercial activity called "Transportation" are required to show their driver's license when they are engaged in the regulated activity called "Transportation" if there exists probable cause to believe they are in violation of the regulatory statutes that govern the regulated activity called, "Transportation". Appellant also argues that providing a driver's license upon demand of a police officer, authorized to enforce the Transportation Code, aids the prosecution in making a prima facie case that the defendant was, in fact, engaged in such a regulated activity. At the initial transportation stop, Appellant invoked his 5th Amendment rights and stated that he was refusing to provide any evidence that could be used to suggest that he was engaged in a regulated activity called transportation.

Appellant was not engaged in Transportation and no such law can exist that would force a private person, travelling in a private automobile, or conveyance, to display papers upon demand of an officer or face additional criminal charges, particularly if the accused reasonably believes that the production of these documents would be used to prove allegations made against the accused in court. Appellant freely provided his name, address, and birth date, but refused to provide the accouterments of transportation on the reasonable belief that these documents were incriminating in a transportation case.

Endless case law supports this position. "We have recently noted that the privilege against self incrimination—the essential mainstay of our adversary system is founded on a complex of values ... To maintain a fair state individual balance, to require the government to shoulder the entire load ... to protect the inviolability of the human personality, our accusatory system of criminal justice demands that the government seeking to punish an individual produce the evidence against him by its own independent labors, rather than by the cruel, simple expedient of compelling it from his own mouth ... in sum, the privilege is fulfilled only when the person is guaranteed the right to remain silent unless he chooses to speak in the unfettered exercise of his own free will" *Miranda v. Arizona, 86 S. Ct. 1602, 384 U.S. 436 (1966)*

"... where the 5th Amendment privilege against self incrimination is involved ... this court has always construed its protections to ensure that an individual is not compelled to produce evidence which later may be used against him as an accused in a criminal action... The protection does not merely encompass evidence which may lead to criminal conviction, but includes information which would furnish a link in the chain of evidence that could lead to prosecution, as well as evidence which an individual reasonably believes could be used against him in a criminal prosecution." *Hoffman v. United States, 341 U.S. 479, 486, 71 S. Ct. 814, 95 L. Ed. 1, 18 (1951)*

Appellee cites *Kothe v. State 152 S.W. 3d 54,63 (Tex. Crim. App. 2004)* and Tex. TRANS. Code Ann. 521.025 (a)(2), stating "a driver is required to present a driver's license upon request of a peace officer" and cites *Naff v. State, 946 S.W. 2d 529, 533 (Tex. App. – Fort Worth 1997)* that "driving on the Texas roads is a privilege." The Appellee fails to note that a "driver" is an individual engaged in a commercial activity and who is behind the wheel of a "motor vehicle", a device used in transportation. Appellee fails to note that neither Kothe nor Naff ever denied that they were engaged in transportation, contrarily, Kothe acknowledged having a passenger. Appellee acknowledges that a driver's license was discovered as a result of the search of Appellant's automobile, and suggested that Appellant was charged with additional crimes, specifically, for evoking his 5th amendment right refusing to produce this evidence. Appellee makes no mention of the refusal or requirements to produce "insurance" upon the demand of a peace officer. It should also be noted here that in addition to being charged with additional crimes for his refusal to provide this evidence, Appellant was taken into custody of the

arresting officers and incarcerated in the Travis County Jail for this refusal, "multiple traffic violations."

The initial Appellate Court overruled the Appellant and stated that the evidence demanded was not potentially incriminating, rather was "exculpatory evidence" and therefore the right against self incrimination does not apply. The court, again, conflates the requirements and obligations of those engaged in the regulated commercial activity on the highways and byways and the rights to privacy and travel of those travelling in a private/personal capacity on the public's roads. The court suggests that because a statute mandates that those regulated by the Transportation Code produce documentation when probable cause exists of an infraction, the rights of the accused do not apply if such evidence is exculpatory rather than incriminating. The court fails to cite any case law to support this opinion.

The Appellant, a reasonable person, believed that the production of this evidence was potentially incriminating and/or could be used to prove the State's case, and invoked his right to refuse to provide that evidence and asked for an attorney to be present prior to any further questioning or interrogation. The court fails to consider the rights of a reasonable person given his belief that this evidence is incriminating. The court also fails to consider the potential consequences of such a production if that evidence yields potentially incriminating information. What if the driver's license was expired? Wouldn't that result in an additional charge? What if the licenses contained incorrect information? What if the proof of insurance was defective in some way? Would this newly acquired information aid in a person's prosecution? Clearly, the production of this documentation is not "exculpatory" in all cases, and in some cases will, in fact, will aid the State in its efforts to prosecute individuals for additional violations of statute.

In other types of cases, "no refusal weekends" for DUI stops, for example, if the accused refuses to provide a breathalyzer sample, or refuses to provide a blood sample, presumably to avoid self-incrimination, the enforcement officer is required to obtain a warrant from the court to compel the accused to provide a sample. Similarly, DNA evidence can be compelled with a warrant issued by the court based on probable cause, if the accused refuses to voluntarily provide this evidence. No such warrant was sought in this case. Had the officers allowed the Appellant to discuss the matter with the attorney that he requested prior to any further questioning or interrogations, Appellant may have produced the documents, however, no attorney was allowed to be present. One officer stated, "You don't need an attorney."

32

The officers did, however, discover Appellant's driver's license during a search of the Appellant's automobile, and would have likely discovered proof of financial responsibility had the search included attempts to find "exculpatory evidence." The Appellant did provide his name, address, and birth date and a simple query of the DPS database did yield a copy of the Appellant's driver's license and may have produced verification of his financial responsibility. Despite these discoveries, the Appellant was charged with additional crimes based solely on his refusal to provide evidence that he reasonably believed was incriminating. The court errs when it upholds these charges and the lower courts decisions to uphold a jury's conviction on these charges.

"There can be no sanction or penalty imposed upon one because of his exercise of Constitutional rights." *Sherar v. Cullen, 481 F. 2d 946 (1973)* "The claim and exercise of a Constitutional right cannot be converted into a crime ..., a denial of them would be a denial of due process." *Simmons v. United States, 390 U.S. 377 (1968).*

**Issue #5: Upon the recognition of a failed discovery by the prosecutor, and an "entirely erroneous ruling" by the trial court, was the Appellant's right to due process denied?**

On January 30th, 2012, Appellant filed a motion for discovery asking for numerous items as part of a normal discovery process. These documents included, "The official police/arrest report associated with the initial stop, arrest and detention of Mr. Christopher Hayes Leverson on or about December 20, 2012."

On February 14, 2013, Judge Mitchell Solomon granted the portions of Appellant's motion for discovery, including these reports.

On or about March 20, 2013, after failing to receive from the State the items listed in the granted portions of Appellant's discovery motion, Appellant filed a motion to compel discovery, again asking for "the court to compel the prosecutor to provide the required documents."

On September 19th, 2013, at a motions hearing, Emily Scholten, assistant city attorney and prosecutor on behalf of the State, insisted that all documents in their possession had been handed over to Appellant, and Judge Sherri Statman, based on this assertion, denied Appellant's motion to compel discovery.

At trial, upon the revelation that the State's only witness was using the offense report demanded in the motion for discovery, and again in the motion to compel discovery, the Prosecutor, Mathew McCabe, on behalf of the State, denied having possession of the report as well as knowledge of the existence of the report. When the trial judge asked, "for the record you are stating that you, as Prosecution, were unaware of this report and you have not reviewed this report?" Mr. McCabe stated that he had not seen the report. The trial judge then ruled that because the offense report "falls into the work product exception" and "technically, it is not discoverable at all" that the case could move forward.

Appellee disregards the claim that the State insisted that it was unaware of the existence of the offense report and argues that the prosecution is "not required to disclose documents that constitute work-product" stating that "incident reports prepared by the police through investigation or as offense reports constitute work-product of the State." Appellee then defends the ruling by the trial judge that the offense report is work-product, citing several cases out of context, and additionally argues that since the offense report is not used as evidence, but as a

34

way to refresh the officer's memory for the purpose of providing testimony, it is not required as an item of discovery.

Appellee suggests that these errors should be disregarded since Appellant, in his brief, failed of highlight harms resulting from the utter disregard of court orders, blatant false statements made by the State (Mathew McCabe) regarding the knowledge of the existence of the offense report, and direct violations of statute, CCP 39.14, that specifically requires production of "any offense reports."

Appellee then states that the "Court's order does not specifically name the incident report and simply orders the State turn over "all relevant evidence". This is factually wrong. The Order of the Court granted items ""a through i" AND all relevant evidence" which included item "c" "The official police/arrest report associated with the initial stop, arrest and detention of Mr. Christopher Hayes Leverson on or about December 20, 2012." (CR 31)

The initial Appellate Court rightly states that "For a prosecutor to say that he was unaware that there was an offense report defies belief." noting that the Appellant was incarcerated and his automobile (court incorrectly refers to the automobile as a "vehicle") impounded. The court states, "any prosecutor should know that there would necessarily be an offense report in this case." The Appellate Court ignores the Appellee's false claims that the court never ordered the discovery of such material.

Turning to the trial court's ruling, the Appellate Court states, "This is an entirely erroneous error" and points to Code of Criminal Procedure 39.14 that commands the production of "any offense reports". The Appellate Court goes on to state that contrary to the claims of the Appellee, "An offense report will never constitute "work product of counsel for the State"" and "The police offense report is the very heart of the material that should be revealed to the accused."

However, the Appellate Court felt it necessary to "conduct a harm analysis" of these atrocious statements, actions, and rulings made by the Prosecution and trial court. The Appellate Court opines that since Appellant was given a "lunch hour" to study the material and following that lunch hour made no additional references to his objections, "One could assume that the lunch break was enough." The court then states, "We can completely disregard the police officer's testimony. We can completely disregard the incident of the offense report not being disclosed in discovery. All we need to do is listen to the Appellant under cross examination."

35

The court cites the transcripts where Appellant testifies that he was in his automobile (Jeep), behind the wheel, on the public streets. Appellant testified the Jeep had a registration sticker that was out of date, and that Appellant refused to provide his driver's license and "insurance" upon demand of the peace officer. The court then states, "if the police officer had never testified and only the defense had been presented, we would arrive at the same result.

Here the court errs in numerous ways.

A. "The penalty for a party's failure to respond to a discovery request is the mandatory exclusion of the evidence requested." See *Alvarado v. Farah Mfg. Co., 830 S.W. 2d 911, 914 (Tex. 1992); F & H Invs., Inc. v. State, 55 S.W.3d 663, 669 (Tex. App.-Waco 2001, no pet.)*.

B. A lunch hour is not sufficient to examine the offense report. In Appellant's motion to compel discovery, Appellant demands this document as well as "moves the court for a continuance to allow for review and any proper response to the newly discovered documents or evidence." Clearly, a pro se Defendant, upon discovery of a multi-paged incident report would need more than a lunch hour to examine the document, flush out the inherent inconsistencies with the report, and formulate strategies to both impugn the credibility of the report as well as the witness using the report to aid in his testimony.

By the lunch hour, trial court Judge Statman was openly hostile and aggressive with the Appellant. The Court had warned the Appellant numerous times that attempts to revisit decisions rendered by the court would result in charges being levied against the Appellate for Contempt of Court. The Prosecution was making blatantly false statements regarding his knowledge of the existence of this report. The trial court judge was making ruling that the Appellate Court agreed was "an entirely erroneous error." Yet, the Appellate Court seems to fault the Appellant for heeding these warnings, noting the inconsistencies with lawful procedure, and failing to place himself in a position of allowing the trial court judge to vent her frustrations upon him.

C. The Court errs when it suggests that the trial court could "completely disregard the police officer's testimony" and the Court errs to suggest that "if the police officer had never testified, and only the defense was presented, we would arrive at the same

36

result." By the time the revelation had been made that the officer was using a document required to be produced in discovery, the State had completed its examination of the witness. The jury heard the complete line of questioning by the Prosecution and answers given by the officer almost exclusively given with reference to the offense report. An expectation that a jury could disregard the entire examination side of testimony given by the State's only witness is improper. The jury was swayed by the testimony of the State's only witness and the jury's decisions were affected by that testimony. At the very least, a mistrial was in order under the circumstances.

D. Had the testimony of the State's only witness been thrown out at the time of the revelation of the offense report, there would have been no need for the Defendant to present a defense. Without the State's only witness' testimony, the State fails to make his case. Having rested his case with no evidence presented, no testimony given, and nothing more than a complaint, which the Court ruled could not be used as evidence, being read into the record, the trial court judge would have no other alternative than to rule in favor of a dismissal for the Defendant as the State failed to make a prima facie case. No such reasonable scenario exists where the Prosecution could fail to put on any case, fail to enter any evidence, and fail to present any witnesses, but the Defendant be required to present a defense.

E. The Appellate Court errs when it suggests that testimony given by the Defendant/Appellant that he was travelling in his automobile on the public's roads, in some way, equates to "driving" or "operating" a "motor vehicle" on the "highways" or "byways" of "this State." The court provides no statutes, no case law, and no precedent to support this flawed legal theory.

Furthermore, at no point did the State, having disregarded the testimony of State's only witness, and disregarded the failure to provide proper disclosure, prove at least one element of the case, the requirement of the Appellant to register his automobile as a "motor vehicle". The jury may not make assumptions of law, and the State failed to prove that the Appellant is required to register his automobile as a "motor vehicle."

It is reversible error to insist that the jury is simply allowed to assume facts that are not in evidence, to assume facts that have not been agreed to, or to make legal

37

conclusions that are not supported by judge's orders, evidence presented, testimony given, or statutes provided. How can the jury's decision that Appellant was "driving" or "operating" a "motor vehicle" on the "highways" or "byways" of "this State" with an expired registration stand when no evidence or testimony is given that the Appellant drove or operated a motor vehicle on the highways or byways of this State or that the Appellant was required to have current registration on this alleged motor vehicle to do so?

F.   With regards to the failure to disclose the offense report and the statements and arguments presented in defense of this failure, Emily Scholten, Mathew McCabe, and Meagan Harding have abandoned their proper roles as Prosecuting attorneys for the State. Code of Criminal Procedure 2.01 states, "…It shall be the primary duty of all prosecuting attorneys, including any special prosecutors, not to convict, but to see that justice is done. They shall not suppress facts or secrete witnesses capable of establishing the innocence of the accused." Similarly, Code of Criminal Procedure 45.201 (d) states, "It is the primary duty of a municipal prosecutor not to convict, but to see that justice is done."

These prosecutors have disrespected the court with blatant lies made to the court, and "on the record". They have posed outlandish arguments that know are fundamentally flawed, and attempted to take advantage of the lack of experience of a pro se litigant to push toward a conviction with utter disregard to their official position. Imagine the audacity of a prosecuting attorney suggesting that an offense report is not subject to disclosure and part of the work-product exemption. This win at all cost behavior should not be condoned by the court.

However, instead of being sanctioned, instead of being admonished by the court for such heinous acts, the trial court upheld claims that the initial Appellate Court stated "defies belief" and rendered "entirely erroneous rulings" in their favor. If it is utterly absurd to believe that experienced prosecuting attorneys, three of them, could be ignorant of an offense report or that they actually believe that an offense report is part of the work-product exemption under statute, what is it to when a trial court judge, the Presiding Judge at the Austin Municipal Court, supports these claims and arguments? And, while the initial Appellate Court did acknowledge the ridiculous

38

nature of the lower courts behaviors and the reckless disregard for due process by the prosecutors, how is it possible that this court would be willing to disregard these things and pose impossible and/or specious scenarios to uphold these reckless opinions? In effect, the initial Appellate Court is giving a green light to future prosecutors and municipal court judges to make these types of claims, statements, arguments, and rulings, leaving them with the belief that a conviction at any cost will be upheld by the higher courts regardless of the laws broken, and disrespect given to the American adversarial system of justice in this country.

Appellant believes that he has highlighted numerous points of reversible error and believes that he has provided this Court with ample grounds to overturn the trial courts decisions, however, Appellant believes that special consideration should be given to the behaviors of those officers and public servants that would disregard their duty to NOT seek a conviction but to ensure that justice is served, and those who have entered oaths to uphold and defend the US and Texas Constitutions as well as the laws of the Great State of Texas. Appellant begs this Court to not let this go unnoticed and unpunished. The appearance of impropriety, alone, demands a reversal of the trial courts orders.

## PRAYER

Appellant, Christopher Leverson, respectfully, for the reasons stated above, asks the Court to reverse the judgment of the court and remand the case for a new trial.

# CERTIFICATE OF SERVICE

I, Christopher Leverson, do hereby certify and verify that I have submitted a true and correct copy of the above and foregoing, on the _3rd_ day of the month of _April_ , year 2015, I certify that original and copy of Appellant's Brief on the Merits complies with TX. R. App. P. was personally hand filed, in:

Third Circuit Court of Appeals at Austin

400 West 14th Street, Austin, Texas 78701,

And, via _FEDERAL Express_ to;

**Respondent #1:**

Judge Sherry Statman

Austin Municipal Court

700 East Seventh Street

Austin, Texas 78701

**Appellee/Prosecution:**

Mathew McCabe

**Respondent #2:**

Judge J. David Phillips

Travis County Court at Law #1

1000 Guadalupe Avenue

Austin, Texas 78701

**Counsel:**

Meagan T. Harding

Assistant City Attorney/City of Austin

700 East Seventh Street

Austin, Texas 78701

Telephone: (512) 974-1343

Facsimile: (512) 974-1244

Karen Kennard

Austin Attorney

300 West Second Street

Austin, Texas 78701

SIGNED:

41